## Panhandle and Gulf Railway Company v. R. H. Kirby.

Decided March 17, 1906.

### 1.—Condemnation of Right of Way—Measure of Damage.

The owner of land through which a right of way has been condemned is not entitled to recover the general enhancement in values to lands in the community, in addition to the value of the land taken and the difference in value of the land not taken before and after condemnation.

### 2.—Right of Cross-Examination.

It was error for the court to refuse to allow defendant to cross-examine the witnesses introduced by plaintiff to prove the value of the land and the extent to which it was injured by the condemnation of a right of way across it, and thus analyze the opinions expressed by said witnesses.

#### ON MOTION FOR REHEARING.

### 3.—Condemnation of Right of Way—Compensation.

The owner of land condemned for a railroad right of way is allowed to receive the value of the land taken and the reduction in value of the part not taken but injured by the construction of the railroad, and no more. Where the value of the whole tract is enhanced in common with other lands in the community by the proposed construction of the. road the owner is entitled to the benefit of that both in estimating the value of the land taken and the dam-

age to that not taken, and such common benefit is not to be offset against his loss, as should be a benefit peculiar to his property.

**4.—Charge—"Satisfaction of Your Minds."**

In a charge to the jury the clause "to the satisfaction of your minds" has often been condemned.

. Appeal from the County Court of Hardeman County.   Tried below before Hon. J. Shirly Cook, special judge.

*H. C. Hord, Duncan G. Smith* and *Fires & Decher,* for appellant.— When a witness testifies to general enhancement of values in the community excepting as to the lands belonging to the defendant by reason of condemnation of a railway right of way, and the defendant owns a tract of land segregated from the tract through which the railway is to be constructed by a public road, it is error to refuse to allow the plaintiff on cross examination of such witness to show that if the tract of land not touched by the railway was the property of one other than the defendant that such tract had appreciated in market value the same as other lands in the community.   Kirby v. Panhandle & Gulf Ry. Co., 88 S. W. Rep., 281; 1 Greenleaf on Evidence, 446; St. Louis S. W. Ry. v. Hughes, 73 S. W. Rep., 976; Boom Co. v. Patterson, 98 U. S., 403; Haney v. Clarke, 65 Texas, 96; Gulf, C. & S. F. Ry. v. Richards, 83 Texas, 207; Houston Oil Co. v. Trammell, 74 S. W. Rep., 899.

Where the jury in answering special issues in a condemnation proceeding fixes the value of the land taken and the value of the remainder before and after the taking, it is error in entering judgment thereon to add to the depreciation in market value the amount found by the jury to be a general increase in market value of lands in the country generally.   Rev. Stats., arts. 4459, 4461, 4462; Kirby v. Panhandle & Gulf Ry., 88 S. W. Rep., 281; Gulf, C. & S. F. Ry. v. Fuller, 63 Texas, 467.

*H. A. Tillett* and *R. W. Hall,* for appellee.

STEPHENS, ASSOCIATE JUSTICE.—This cause is again before us on appeal, but the position of the parties on the docket is now reversed. See Kirby v. Panhandle & Gulf Ry. Co., 88 S. W. Rep., 281.   On the last trial the court submitted the case on special issues, in response to which the jury found:

1.   That the market value of the 5.23 acres of land condemned by the railway company for its right of way on the 12th day of April, 1902, was on that day and immediately before it was condemned, $12.50 per acre.

2.   That the tract of land owned by the appellee over which the right of way was condemned contained 1,200 acres.

3.   That the market value immediately before the condemnation of what remained after deducting the 5.23 acres was $12.50 per acre.

4.   That the market value immediately after the condemnation of what remained was $11.75 per acre.

These findings covered all the material issues in the case; nevertheless the court submitted additional issues as follows:

"5.   On the 12th day of April, 1902, immediately after the con-

demnation and taking of said 5.23 acres as a right of way, was there or not a general increase or decrease of the market value of lands in general, and common to all lands, in the community where the defendant's said farm is situate, occasioned by reason of plaintiff's condemnation and taking of a right of way for its railroad through said community?

"6. If in answer to the fifth issue you say there was such an increase in the market value of said lands, then what was the amount per acre, of such increase.

"7. If in answer to the fifth issue you say that there was such a decrease in the market value of said lands, then what was the amount per acre of such decrease?"

The answer given to the fifth issue so submitted was "increase;" to the sixth, $1.00 per acre;" and to the seventh no answer was made.

On this verdict the court rendered judgment against the railway company for $65.37, the value of the land taken, and for $896.07, the difference in value before and after the condemnation of the land not taken, and "for the general enhancement in values to lands generally in the community of the Kirby farm the sum of $1,194.77" and "interest at the rate of 6 percent per annum from the 12th day of April, 1902, on the aggregate of said amounts, to wit: $2,156.21, amounting to the sum of $420.50, making the aggregate sum of $2,578.66," for which, besides costs of suit, judgment was rendered. .

We know of no reason or authority for allowing the owner of land through which a railway right of way had been condemned to recover, in addition to the value of the land taken and in addition to the difference in value before and after condemnation of the land not taken, "the general enhancement in values to lands generally in the community." Presumptively the appellee received the benefit of this "general enhancement" in the first, third and fourth findings of the jury, since such enhancement became an essential part of the market value of the land. If in making these findings the jury excluded that element of value, this must have been due to the fact that the court erroneously submitted to them the further issues above quoted, which could have served no other purpose than to confuse and mislead them.

The court also erred in refusing to allow appellant to cross examine the witnesses offered by the appellee to prove the value of the land and the extent to which it was injured by the condemnation of the right of way across it. In making this ruling the court seems to have disregarded what was stated on that subject in the opinion of Justice Speer on the former appeal. It was the evident purpose of this cross examination to have the witnesses make an analysis of the opinions given by them to the jury as to the extent to which the value of the land was injuriously affected by the condemnation of the right of way, which was clearly competent. It was of course proper in the first instance to permit the witnesses, as was done, to state to the jury the extent to which the condemnation of the right of way affected the value of appellee's land as a whole; but in order that the jury might properly weigh this testimony it was proper, on cross examination, for counsel for appellant, as they sought in vain to do, to have the witnesses state the effect of such condemnation on the different parts into which this

tract of land was segregated by the Fort Worth & Denver City Railway, the Chillicothe public road and the condemnation in question.

For the errors pointed out the judgment is reversed and the cause remanded for a new trial.

*Reversed and remanded.*

### ON MOTION FOR REHEARING.

In an argument of eight or ten pages incorporated in and constituting the bulk of this motion, it is seriously maintained that the following conclusion announced in the opinion on original hearing was erroneous: "We know of no reason or authority for allowing the owner of land through which a railway right of way has been condemned to recover, in addition to the value of the land taken, and in addition to the difference in value before and after condemnation of the land not taken, the general enhancement in values to lands generally in the community." While we think the proposition needs no defense, in view of another trial we deem it proper to indicate our views on some of the matters discussed so elaborately in the argument.

The law allows the owner of land condemned for a railroad right of way to receive the value of the land taken and the reduction in value of the part not taken but injured by the construction of the railroad across the whole, and no more. Of course, where the value of the land over which a right of way is condemned is enhanced in common with other lands in the community on account of the proposed construction of the railroad the owner is entitled to the benefit of that both in estimating the value of the land taken and in estimating the damages to the land not taken, and such common benefit is not to be offset against his loss, as should be a benefit peculiar to his property. This is made too plain for discussion by our statute on that subject, which was quoted and recommended in the opinion on the former appeal as a guide for another trial. Instead of following the statute, however, the court undertook, it seems, to follow the opinion of the court of Civil Appeals in the case of Pochila v. Calvert, W. & B. Ry., 72 S. W. Rep., 255, which was not a condemnation proceeding at all, but a damage suit in which the property injured had increased in value till it was worth more in an injured condition than it was before the construction of the railroad. This case was cited in the opinion on the former appeal on a point then but not now involved, and as it seems to have led both the court and counsel for appellee astray it is perhaps to be regretted that it was cited at all.

In the course of appellee's argument the rather plausible position is assumed, that unless the amount found by the jury as the general increase per acre of lands in the community be added to the difference in value of appellee's land just before and just after the condemnation of the right of way he will be deprived of the benefit of this general increase due to the proposed construction of the railroad. This may be true, and it was for this very reason that we did not render judgment on the first, second, third and fourth findings, which cover all the material issues, appellant having indicated a willingness, in such event to waive the error assigned to the denial of its right of cross examination.

We can not, however, as already seen, assent to appellee's contention that the answer of the jury to fifth and sixth issues entitled him to the judgment rendered in his favor for this additional sum. The fifth issue, besides relating to lands generally, and only to appellee's inferentially, called for a very peculiar and unusual finding and the answer of the jury to it was a very general one, consisting of one word—"increase." Did the jury mean by that answer to find that at a particular hour on the 12th day of April, 1902—immediately after the condemnation of appellee's land—a general increase took place in the market value of lands in general, and common to all lands, in that community, occasioned by the condemnation of a right of way through said community? If so, something must have taken place in this condemnation proceeding unknown to the history of such proceedings. Usually the general increase in values comes before the right of way has been condemned through the community. Usually the right of way is not condemned through the whole community at the same hour or even on the same day. But the literal rendering contended for of this finding involves something more unusual still, and that is, that just after appellee's land was condemned on April 12, 1902, the value of all the lands in that community instantly rose in the market one dollar per acre. The brief answer of the jury seems rather to indicate, looking at things in a reasonable light, that they found a general increase in value due to the condemnation or proposed condemnation of the right of way through the community without undertaking to specify exactly when it took place. If, however, extraordinary as it may seem, it should be made to appear on the next trial that appellee's land in common with the lands of the community did not increase in value till just after the right of way across it was condemned, the jury should be instructed to exclude this from consideration in assessing the value, immediately after the condemnation, of the land not taken.

In view of another trial we call attention to the fact that the following clause in the court's charge has often been condemned, "to the satisfaction of your minds," the word "satisfaction" being objectionable.

*Motion overruled.*