FT. WORTH & D. C. RY. CO. v. AYERS.

(Court of Civil Appeals of Texas. Amarillo. June 22, 1912.)

1. MUNICIPAL CORPORATIONS (§ 669*) — BOUNDARY FENCE—RIGHT TO CONSTRUCT.

If a street lies between a railway right of way and plaintiff's lot, the railway company cannot construct a fence on plaintiff's boundary line, but otherwise if no street exists.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 1445; Dec. Dig. § 669.*]

2. EASEMENTS (§ 8*)—PRESCRIPTIVE RIGHTS.

Permissive use of a road or way across uninclosed land does not ripen into a right, however long existing.

[Ed. Note.—For other cases, see Easements, Cent. Dig. §§ 23, 24, 33; Dec. Dig. § 8.*]

3. DEDICATION (§ 44*)— STREETS — IMPLIED DEDICATION.

The act of an owner of land in selling lots on each side of a strip of land lying in extension of a street, while evidence tending to show implied dedication of the strip as a street, is not conclusive on that point.

[Ed. Note.—For other cases, see Dedication, Cent. Dig. §§ 85–87; Dec. Dig. § 44.*]

4. DEDICATION (§ 45*)—STREETS—JURY QUESTION.

In an action to enjoin a railway company from constructing a fence on the line of plaintiff's lot, whether a street existed between the company's right of way and the lot by dedication held, under the evidence, a jury question.

[Ed. Note.—For other cases, see Dedication, Cent. Dig. §, 88; Dec. Dig. § 45.*]

5. EASEMENTS (§ 18*)—ABUTTING OWNERS— SUBDIVISION OF LOTS.

An owner of a lot 50 feet wide and 150 feet long, extending along a railway right of way, is not entitled to subdivide the lot into smaller lots facing upon the right of way, and enforce access directly upon the right of way.

[Ed. Note.—For other cases, see Easements, Cent. Dig. §§ 50–55; Dec. Dig. § 18.*]

6. EASEMENTS (§ 11*) — ANCIENT LIGHTS— APPLICABILITY OF DOCTRINE.

The doctrine of ancient lights does not obtain in Texas; and hence an owner of a lot adjoining a railway right of way cannot prevent the railway company from cutting off the view from the lot by erecting a fence along the boundary line.

[Ed. Note.—For other cases, see Easements, Cent. Dig. § 34; Dec. Dig. § 11.*]

7. RAILROADS (§ 73*)—RIGHT OF WAY—ENJOYMENT.

Sayles' Ann. Civ. St. 1897, art. 4483, which limits the building which may be constructed on a railway right of way, does not apply to lands owned by a railway company in fee, and hence, where such ownership exists, an owner of a lot adjoining a right of way cannot rely upon the statute to defeat the company's right to construct a fence along the line of such lot.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 179–182; Dec. Dig. § 73.*]

8. RAILROADS (§ 73*) — FENCE — ACTION TO ENJOIN CONSTRUCTION—EVIDENCE—MATERIALITY.

In an action to enjoin a railway company from constructing a fence along the line of a lot adjoining its right of way, evidence that the fence would affect the purpose and advantage of the lot is immaterial and irrelevant.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 179–182; Dec. Dig. § 73.*]

9. EVIDENCE (§ 472*)—CONCLUSIONS.

In an action against a railway company to enjoin construction of a fence along the line of a lot abutting upon the company's right of way, testimony that the fence would obstruct the view of plaintiff's property was not inadmissible, as constituting a conclusion of the witness and an invasion of the jury's province.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2186–2195; Dec. Dig. § 472.*]

10. EVIDENCE (§ 113*)—FENCE—CONSTRUCTION—DAMAGE TO ADJOINING PROPERTY.

In an action against a railway company to enjoin construction of a fence between its right of way and an adjoining lot, testimony as to the value of the lot on account of its proximity to the company's station, and as to what uses the lot could be subjected, was properly admitted on the question of market value.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 259–296; Dec. Dig. § 113.*]

11. DAMAGES (§ 174*) — FENCE — CONSTRUCTION — DAMAGE TO ADJOINING PROPERTY — EVIDENCE.

In an action against a railroad company to enjoin construction of a fence between its right of way and plaintiff's lot, plaintiff's testimony should have been confined to the market value of his property if the fence were erected, and evidence that without a fence it would be worth from $10,000 to $12,000 was inadmissible.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 462–467; Dec. Dig. § 174.*]

12. EVIDENCE (§ 474*)—OPINION EVIDENCE— QUALIFICATIONS OF WITNESS.

A witness who was familiar with the location of property, and had had some dealings in real estate in a city where it was located, and was acquainted with values, was qualified to testify to the value of the particular property.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2196–2219; Dec. Dig. § 474.*]

13. RAILROADS (§ 73*)—FENCE ALONG RIGHT OF WAY—ACTION TO ENJOIN—PLEADING.

In an action to enjoin a railway company from constructing a fence between its right of way and plaintiff's lot, an exception to an allegation in the petition that the fence was apt to injure plaintiff's existing and contemplated lines of business was properly overruled.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 179–182; Dec. Dig. § 73.*]

14. PLEADING (§ 8*)—CONCLUSIONS.

In an action to enjoin a railway company from constructing a fence between its right of way and plaintiff's lot, an allegation that the right of way constituted a public highway to and from which plaintiff had a right of ingress and egress, etc., was subject to exception for failing to plead such facts showing a right of ingress and egress.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 12–28½; Dec. Dig. § 8.*]

15. MUNICIPAL CORPORATIONS (§ 653*)—DEDICATION OF STREET—EVIDENCE.

In an action to enjoin a railway company from constructing a fence between its right of way and plaintiff's lot, allegations that a street existed between the right of way and the lot, and had for many years been open as a public street, etc., was sufficient to sustain proof of a dedication or dedication by prescription of the land as a street.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 1427; Dec. Dig. § 653.*]

16. APPEAL AND ERROR (§ 843*)—REVIEW— SUFFICIENCY OF EVIDENCE.

Sufficiency of the evidence to sustain a judgment appealed from will not be reviewed,

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

where a new trial is granted for errors at the trial.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3331–3342; Dec. Dig. § 843.*]

Appeal from District Court, Potter County; D. B. Hill, Judge.

Action by J. S. Ayers against the Ft. Worth & Denver City Railway Company. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

Turner & Wharton, of Amarillo, for appellant. Gustavus, Bowman & Jackson, of Amarillo, for appellee.

HALL, J. Appellee filed this suit against appellant Railway Company in the district court of Potter county, praying for an injunction against appellant to restrain it from removing a certain switch track, and from erecting a fence on appellant's right of way, in the city of Amarillo. Appellee alleges that he is the owner of a certain town lot in the town of Amarillo, which is 50 feet by 150 feet, lying just north of First street and between Buchanan and Pierce streets, in said city, and which is south of and adjoins appellant's right of way; that his lot abuts on Pierce street 50 feet and on First street 150 feet; that appellant has constructed a new passenger depot upon its said right of way, between Buchanan and Filmore streets, just north of appellee's lot; that there is now at this time, and has been for many years, a switch track extending along the south side of appellant's right of way just north of appellee's property, which was used for the setting of cars and unloading purposes; that appellee has now, and for many years prior to this time had, an ice cream factory upon his said lot, where he has been engaged in the business of manufacturing and shipping ice cream and in conducting said business has used said track of appellant railway company, setting and loading cars in the handling of shipments of materials, etc., used in conducting his business; that, by reason of his property being close to appellant's right of way and passenger depot, said lot was convenient and valuable for use by appellee in constructing and establishing their various and sundry character of business, such as restaurants, cigar stores, barber shops, confectionery stores, rooming houses, and other business which would be valuable on account of their location and close proximity to said depot of appellant, where a large number of persons would go to take passage on appellant's trains, and that said land was valuable for appellee's present business which was being conducted thereon. It is further alleged that appellant has threatened and made preparation and started to construct a board fence between appellee's said tract of land and appellant's new depot, said fence being just north of appellee's lot and on the south side of appellant's right of way; that said fence would be permanent, and would be maintained by appellant to prevent any of the uses of appellee's property to which it is adapted, rendering the property of appellee valueless; that said fence would be constructed of wood and combustible material, and would increase the hazard of fire to any buildings or structures on appellee's land; that it was not necessary to the use and enjoyment of appellant's right of way or its depot building; that its construction was in violation of the city ordinances forbidding the construction of wooden buildings within the fire limits; that it would interfere with appellee's right of free ingress and egress, and that said fence was being constructed through a spirit of spite, animosity, and ill feeling toward appellee; that appellant enjoyed a heavy passenger traffic; that a large number of people came to and departed from Amarillo over appellant's line of railway, and a large number of persons congregated around appellant's depot at the time of arrival and departure of trains; that the fence would be a barrier and obstruction between said depot and appellee's property, and prevent access to any building or business that might be established thereon. A temporary writ of injunction was granted and issued, and appellant on November 20, 1909, filed its first original answer, containing general and special exceptions and general denial, and alleged that its said depot is located opposite the end of Pierce street, about midway between Buchanan street on the east and Filmore street on the west; that Pierce street does not extend to the right of way of this appellant, but a strip of land owned or claimed by private individuals intervenes between Pierce street and the right of way of appellant, so that the public can go to the depot of appellant only by way of Buchanan street on the east and Filmore on the west; that a brick platform has been constructed from its depot to Buchanan street on the east and Filmore on the west side; that it was necessary to remove said switch track and to erect said fence to protect its employés and the traveling public at said depot; that it intended to erect a neat board fence six feet high for preventing appellant's employés and other persons from trespassing on the adjoining property of appellee and others owning said adjoining property, and also to serve the purpose of shutting off the view from its depot of the rear premises of the Riley Hotel, which are in view of the depot.

The temporary injunction, restraining the railway company from removing its switch track, was dissolved, and the motion to dissolve the injunction restraining the erection of the fence was overruled. There is no appeal from the order of the court on the motion to dissolve the temporary injunction. By supplemental petition appellee specially pleaded that Pierce street is now and for

many years prior to the institution of this suit has been open and kept open to the south boundary line of appellant's right of way, and is now being used as a public street leading to and opening upon appellant's right of way in the same manner as any other public street in the city, and that such use has continued for more than 10 years prior to the filing of this suit. On August 28, 1911, a trial was had before a jury, and, after the evidence had all been introduced, the court instructed the jury to find that the material allegations in appellee's petition were true, and judgment was thereupon rendered enjoining appellant from the erection of said fence.

Appellee introduced in evidence a patent from the state of Texas to F. W. Levings, dated July 1, 1878, conveying 640 acres of land and other record testimony showing that Glidden & Sanborn became the owners of this section by mesne conveyances from the patentee and upon which property the lot in question is situated; also a deed from H. B. Sanborn to appellant Railway Company, containing this recital: "By these presents do grant, bargain and convey and relinquish to the said Ft. Worth & Denver City Railway Company the following described right of way over my lands, situated in the county of Potter and state of Texas, to wit:" Said deed then describes a strip of land 300 feet wide, and contains habendum, tenendum, and warranty clauses. It appears that appellee's property is only 40 feet from the depot, and that it can be plainly seen from the south doors of the depot; that the proposed fence ran along the north line' of appellee's property and west across the end of Pierce street, and is about 380 feet in length, the effect of which would have been to have required appellee to go either to Buchanan or Filmore streets in order to reach appellant's depot. The damage was estimated at about one-half the value of the property, or $6,000. A blue print map appears in the record which shows that Pierce street extends to the right of way opening on to it immediately south of the depot.

[1-3] It seems that there was a vellum map from which some of the witnesses testified, showing that Pierce street did not extend further north than the southwest corner of appellee's lot. It was shown that appellee's property was being rented for storing oil, and was no longer used as an ice cream factory at the time of the trial. Appellee testified that, if appellant had cars on the track adjoining his property, it would obstruct the view, and interfere with ingress and egress in the same manner as would a fence. The evidence tends to show that the back yard of the Riley Hotel was not a model of neatness, if, in fact, it complied with the most lax sanitary regulations, and that its ash barrels, chicken yards, etc., could be seen from the eating house of the appellant rail-way company, which was situated a few feet east of the depot. There was no testimony offered to show that the construction of the fence would endanger appellee's property from fire, and no testimony sustaining the allegation of spite and malice. The uncontradicted testimony shows that ever since the city was founded, and for 23 years, the people living in Amarillo have used Pierce street going to and from appellant's right of way. In our opinion the right to construct a fence across the end of what would be an extension of Pierce street is one question, and the right to construct it from the northwest corner of appellee's lot east is another question, controlled by different rules of law. In Heilbron v. St. L. & S. W. Ry. Co., 52 Tex. Civ. App. 575, 113 S. W. 610, 979, it is said: "Owners of property abutting upon a public highway have a vested right in the easement created by the existence of the highway, and, when this highway is obstructed or destroyed and the obstruction or destruction causes a special injury to the property owner beyond that which results to the public generally, such owner has a cause of action against the aggressor." If, as contended by the appellant Railway Company, Pierce street does not extend to the right of way, but ends at the north line of First street, then the lot of land lying between appellee's lot on the east and the Armstrong Storage Company's lot on the west may still belong to Sanborn or some other private party, in which event, in so far as the rights of appellee are concerned, the appellant would clearly have the right to erect the fence as proposed. On the other hand, if, as a matter of fact, said street does extend to the south line of the right of way as contended by appellee, then the erection of the fence as proposed might constitute a nuisance, and, if the jury should so find, the appellee would have the right to enjoin its erection from the northwest corner of appellee's lot to the northeast corner of the warehouse lot of the Armstrong Storage Company. The blue print map shows the extension of Pierce street across this strip of land, which is 50 feet in width. The vellum map, used by certain of the witnesses, who testified (but which has not been sent up as a part of the statement of facts) shows that this strip of land, together with appellee's lot, and the lot belonging to the Armstrong Storage Company, is marked "Reserved for railway purposes." It appears that the blue print map is attached to what is called "Glidden & Sanborn abstract," while the vellum map seems to be the first one made by Sanborn, and is recorded in the office of the county clerk of Potter county. Then it becomes a question of fact whether that part of said strip lying between appellee's lot on the east and the lot belonging to the Armstrong Storage Company on the west is still private property of Sanborn or his assignees, or whether it has

ever been dedicated by Sanborn or any of his assignees to the city as a street, or whether it has become a street by prescription and adverse user. Upon this issue the record is not very clear. As held in Heilbron v. St. L. & S. W. Ry. Co., supra, and the authorities cited therein, "it is a well-established principle of law in this state that the permissive use of a road or way across uninclosed land for any length of time does not ripen into a right," and, so far as the record shows, this piece of property may still belong to H. B. Sanborn, and his title thereto not affected by public use. The act of Sanborn in selling lots now owned by appellee and by the Armstrong Storage Company lying upon each side of what would be an extension of Pierce street could not be taken as an implied dedication of such property to the city as a street, but must be taken only as evidence tending to establish such dedication. Ramthun v. Halfman, 58 Tex. 551.

[4] We think the evidence upon this question should have been submitted to the jury under proper instructions, and, if it had been found that Sanborn's acts constituted an implied dedication, or that circumstances existed which had the effect of creating a street by prescription between appellee's lot and the lot owned by the Armstrong Storage Company, this appellee could successfully maintain his action to restrain the erection of the fence across said property, as it would then be Pierce street, as effectually as if dedicated by the positive act of Sanborn. It follows that the court erred in peremptorily instructing the jury, instead of submitting this issue for their consideration. The deed from H. B. Sanborn to the appellant railway contains the following recitals: "By these presents do grant, bargain, convey and relinquish to the said Ft. Worth & Denver City Railway Company, the following described right of way over my lands, situated in the county of Potter and state of Texas, to wit:" Then follows the description of a strip of land 300 feet wide across the entire section of land. The habendum and tenendum clauses are in the usual form, and the deed contains a covenant of warranty, and in our opinion conveys to appellant Railway Company the fee of the land described therein. Sayles' Civil Statutes, art. 627. Article 4478, Sayles' Civil Statutes, is: "Any railroad company shall have the right to purchase, hold and use all such real estate and other property as may be necessary for the construction and use of its railway and the stations and other accommodations necessary fo accomplish the objects of its incorporation and to convey the same when no longer required for the use of such railway."

[5] Appellee contends that he had the right, if he so desired, to divide his lot into a number of smaller lots 50 feet in length, running north and south, and opening directly upon appellant's right of way. In our opinion he had no such right under the evidence.

[6] We think the rule in this state is that no cause of action will lie by reason of appellant having attempted to cut off the view from appellee's lot by the erection of the fence. The doctrine of ancient lights does not obtain in this state. Klein v. Gehrung, 25 Tex. Supp. 233, 78 Am. Dec. 565. In H. E. & W. T. Railway Co. v. Simpson, 81 S. W. 353, the Railway Company was sued for piling cross-ties upon its right of way and in front of plaintiff's house in such large quantities as to shut off the front view of his residence and damages were denied upon that ground. In the case of Kotz v. I. C. Railway Co., 188 Ill. 578, 59 N. E. 240, the Supreme Court of Illinois said: "The appellant predicates a further right to recover in this cause upon a claim that the right of way of appellee is a public highway, and that as abutting owner thereon he has an easement in the light, air, and view which would naturally come over the right of way to his premises of which he has been deprived by the elevation of its roadbed and tracks. The fallacy of this position lies in the assumption that the right of way of a railroad is a public highway in the sense that a street or road is a public highway. The railroad is for some purposes and in a certain sense a highway; not, however, in the sense that a street or road is a public highway is it quasi public in its character. Right of eminent domain may be invoked in aid of its construction, and, when fully equipped and in operation, it becomes a common carrier, and is liable alike to all persons for the transportation of themselves and their property and as a common carrier may be controlled and governed by the state within well-defined limits by the United States. A street or road is a public highway in a much broader sense. It is made out and opened by the public authorities for the general use of the public, built and kept in repair at public expense, and all persons have the right of free access thereto and the right to travel thereon. To obstruct it is made a criminal offense. By necessity one owning property abutting on or locating his building adjacent to a street or road enjoys, not alone the right of access thereto with the right to travel thereon, but, in addition thereto, the light, air, and view which comes to his property over the same. To deprive him of such right would be to destroy the thing itself, out of which his right grows. Therefore of necessity the right exists. A railway company, when vested with the title fee except in the discharge of its duties, as a common carrier, is the owner of and entitled to the exclusive use, possession, and control of its right of way, the same as a private person owns and controls its property, disincumbered of any right thereon of its abutting or adjoining neighbors as fully and completely as does

the individual owner of property. The public do not have the right of access to its right of way except at designated places, and abutting owners do not build adjacent to its right of way with a view of access thereto and the enjoyment of light, air, and view therefrom." Appellant's depot as now situated is upon its right of way, 40 feet from its south line, and across Pierce street if extended through the right of way. It cannot be successfully contended that appellant could not have constructed its depot upon the south line of the right of way and extended the building sufficiently far toward the east so as to have practically joined with appellee's building. If it could have erected its depot or other buildings necessary for its use upon its right of way and adjoining appellee's property, there is no reason why it could not also erect a fence upon the south line of the right of way, extending the full length of appellee's lot. In Slaughter v. Cullup, 22 Tex. Civ. App. 578, 55 S. W. 182, appellants sought to enjoin appellee from fencing his own land because to do so would inclose one of appellants' sections, and cut it off from another of their sections, upon which all of appellants' stock water was situated. The trial court sustained a general demurrer to the petition, and upon appeal judgment was affirmed by the Second Court of Civil Appeals, which held: "Appellee had the right to fence his sections, and, unless he included some portion of appellant's land by crossing at the corner more than the fence rested upon, he had the right to fence it as he proposed."

[7] Article 4483, Sayles' Civil Statutes, cited as authority by appellee, is: "Such corporation shall have the right to erect and maintain all necessary and convenient buildings and stations, fixtures and machinery for the accommodation and use of passengers, freights and business interests, or which may be necessary for the construction or operation of its railway, but no railway company shall have the power, either by its own employees or other persons, to construct any buildings along the line of their railroad, to be occupied by their employees or others, except at their respective depot stations and section houses and at such places only such buildings as may be necessary for the transaction of their legitimate business operations," etc. But is was expressly held in Calcasieu Lumber Co. v. Harris, 77 Tex. 22, 13 S. W. 454, that the provisions of this article do not apply to lands owned and held by railway companies in fee, and the right of such company in lands where it owns the fee is thus defined in that case by Judge Stayton: "The statute confers the right on such corporations to own the fee in lands whether these be necessary to the operation of the company's business or not, though in the one case they are required to alienate them but in the other not. There is nothing in the article evidencing an intention to take away from a railway company, so long as it owns the fee in land, the rights and powers usually incident to such ownership, and the power of the Legislature to do this may be questioned unless in a case where this may become necessary as a police regulation. The ownership of land, when the estate is a fee, carries with it the right to use the land in any manner not hurtful to others and the right to lease it to others." We therefore conclude that appellant Railway Company has the right to build the proposed fence parallel with appellee's north line and the full length of appellee's lot, subject to the restrictions specified by Judge Stayton in the foregoing quotation, and that, in so far as this case is concerned, the right to build that particular portion of the fence is absolute and cannot be enjoined by appellee.

What has heretofore been said disposes of the first seven assignments of error in appellant's brief.

The eighth assignment of error is to the action of the court in admitting over appellant's objections the City Ordinance No. 77 of the town of Amarillo, known as the "fire ordinance." This assignment is sustained, since it is clear from the language of the ordinance that it in no manner is applicable to the erection of the fence in question.

[8] The ninth assignment complains of the action of the trial court permitting the witness Gilvin to testify that a fence six or eight feet high, constructed along the north line of plaintiff's property, would affect the purpose and advantage of said property. The court did not err in overruling the particular objections urged to the introduction of this testimony, but, in view of another trial, it is proper for us to say that the testimony is immaterial and irrelevant in view of our holding herein that appellant had the right to erect the fence or any other structure not in violation of the fire ordinance of the city, along the north line of appellee's property.

[9] The tenth assignment complains of the action of the court in permitting the witness Sanders to testify that a fence six feet high, constructed on the south side of defendant's depot and platform, would obstruct the view as to plaintiff's property because such evidence is the expression and conclusion of the witness and was an attempt to invade the province of the jury. This assignment is overruled. The evidence shows that the witness was familiar with the premises and the conditions surrounding them, that he knew the locality of the depot, platform, and of appellee's property, and we think there was nothing improper in permitting him to state the facts as they would exist if the fence was constructed as proposed.

[10] The eleventh assignment insists that the witness Sanders should not have been permitted to testify as to what appellee's property would be valuable for by reason of its proximity to defendant's depot, and to state what uses appellee's property could be put to. This assignment is overruled. We think this testimony is admissible upon the question of market value. Panhandle & G. Ry. Co. v. Kirby, 42 Tex. Civ. App. 340, 94 S. W. 173.

[11, 12] Under the twelfth assignment, appellant contends that the court erred in permitting plaintiff Ayers to testify that his property would be worth only half its value if the fence was erected and that without the fence it would be worth from $10,000 to $12,000. We think the evidence should have been confined to the market value. The bill of exceptions shows that he was familiar with the location of the property, that he had had some dealings in real estate in Amarillo and was acquainted with values, and we think the court properly held him qualified.

[13] The thirteenth assignment of error goes to the ruling of the court upon appellant's special exception, urged to that part of plaintiff's petition wherein it sought to enjoin appellant from erecting the fence, because it was liable to injure his ice cream and other contemplated business. It is insisted that this exception should be sustained because it appeared from appellee's original petition that he had an adequate remedy at law for damages if he had any action at all. It seems from the record that the effort of appellee to enjoin the removal of the siding from along the north line of his property was abandoned. At any rate, we have concluded that appellant had the right to build the fence along the line of appellee's lot, provided it was constructed upon appellant's property, and the court did not err in overruling the special exception.

[14] The fourteenth assignment of error assigns error upon the overruling of appellant's twenty-third special exception. Appellee's petition alleged that appellant's right of way was a public highway, and that he had the right of egress and ingress to the right of way, and that the erection of said fence caused him irreparable injury, etc. This allegation was excepted to because no special facts were alleged showing a right of egress and ingress and should have been sustained. There is nothing in the petition showing that appellee or the general public had acquired an easement over the right of way from the end of Pierce street, or that that portion of appellant's right of way had ever been dedicated to such purpose. This assignment is sustained.

[15] Under the fifteenth assignment, appellant complains that the court erred in overruling its special exception to paragraph 3 of plaintiff's supplemental petition, for the reason that if the street had been dedicated or was intended to be dedicated, even though the same had been open to the public for ten years or more, it would not constitute any defense to defendant's right to erect said fence. We think the allegations are sufficient to admit proof of facts going to sustain a direct dedication or dedication by prescription, and this assignment is overruled.

[16] The sixteenth assignment questions the sufficiency of the evidence to sustain the judgment, and, in view of another trial, it will not be proper for us to pass upon the point raised, and this assignment, together with the seventeenth and eighteenth assignments, are not considered.

By reason of the errors hereinbefore set out, the judgment is reversed, and the cause remanded.