## TERRELL v. GENERAL MOTORS ACCEPTANCE CORPORATION.

### No. 3969.

Court of Civil Appeals of Texas. Amarillo.

Feb. 22, 1933.

Rehearing Denied April 26, 1933.

E. E. Diggs, of Childress, for appellant.

Dorenfield, Foster & Fullingim, of Amarillo, for appellee.

HALL, Chief Justice.

The appellant was engaged in selling automobiles in the city of Childress. He sold four automobiles, taking the notes of the several purchasers, each note being secured by a chattel mortgage upon the car so sold. The notes and mortgages securing them were assigned to the appellee company by written assignments, which authorized the company to do every act and thing necessary to collect the debt. The appellant guaranteed the payment of each note and agreed that his liability should not be affected by any settlement, extension of credit, or variation of the terms of the contract with the purchasers of the cars and also waived notice of the acceptance of the guaranty and notice of nonpayment and nonperformance by the purchasers. It is provided in all four of the mortgages that the seller had the right to enter upon the premises of the purchaser and remove the same and to resell the car so taken at public or private sale, without demand for performance, with or without notice to the purchaser, and with or without having such property at the place of sale and upon such terms and in such manner as the seller might determine and to deduct from the proceeds of any such sale all expenses, including a reasonable attorney fee.

The purchasers of the several cars defaulted, and upon the failure of Terrell to pay the corporation the amount due, this action was instituted.

J. M. Terrell, the brother of John J. Terrell, was made a defendant and alleged to be a partner in the business. He was later dismissed as a party and the case proceeded to trial against John J. Terrell only.

By way of answer Terrell alleged that the plaintiff company did not sell the automobiles which it had repossessed at their reasonable market value, but that it sacrificed all of said cars and sold them for a grossly inadequate

price and if they had been sold at their reasonable and fair value, each of said automobiles would have been sold for sufficient money to have more than paid the indebtedness against it. He sets out the reasonable value of each of the cars and states the amount for which it had been sold by the company's representative and alleges "that if plaintiff had used reasonable care and diligence it could have sold each and all of the above named automobiles for the amounts of money herein last above named and stated as to each of them, but on the contrary plaintiff, in total disregard of this defendant's rights and knowing that he was vitally interested in the said automobiles being sold for a reasonable and fair price and market value, so that he would not be required to pay anything to plaintiff, or become liable to plaintiff in any sums whatever, by reason of his endorsement of the notes and mortgages for and against said automobiles, assigned and transferred to plaintiff as alleged by it, and this defendant avers that plaintiff willfully and wantonly sold each and all of said automobiles at the sacrifice prices named in plaintiff's petition and had it sold each and all of said automobiles for a reasonable, fair and market price as hereinbefore alleged by defendant, plaintiff would have more than been paid the full amounts due upon said notes and each of them."

When both sides had closed in the introduction of testimony, the court directed the jury to return a verdict in favor of the appellee company.

■The evidence shows that the automobiles were repossessed by the appellee company under the powers contained in the several mortgages and sold by their agent McCormick at private sale. The evidence is sharply conflicting as to whether they were sold for a fair and reasonable price. The principal complaint by appellant is that because the evidence conflicted upon this issue, the court should have submitted the case to the jury instead of directing a verdict. We sustain the proposition.

We do not know upon what theory the court refused to submit the case to the jury upon special issues, but we assume from the position taken by appellee's counsel in their brief that it was because the court agreed with appellee's counsel in their contention that there was no pleading and no proof of any unfairness, misconduct, or willfullness on the part of the appellee company in selling the cars at private sale. It will be observed that the appellant alleges that the sales were made in total disregard of his rights and that appellee willfully and wantonly sold each and all of them at "the sacrifice prices named in plaintiff's petition" and that, if they had been sold for a reasonable, fair, and market price, they would have paid the full amount due upon the notes.

The judgment shows that the court overruled the appellee's demurrers to the appellant's answer setting up his defenses, but sustained the appellee's demurrers urged to appellant's cross-action.

■The appellant filed no cross-action. The willful and wanton sale of the repossessed cars at a sacrifice was alleged by appellant as a set-off and counterclaim to appellee's action against him to recover the deficiency and this idea may have influenced the trial judge in his ruling excluding McCormick's evidence and other testimony as to other sales which the court said would be sustained if offered. Appellee in its first supplemental petition is the first party to designate the appellant's answer as a cross-action, and it is clear from the judgment of the court overruling it that the demurrer was argued and urged by appellee to the answer as a cross-action, thus inviting the error, if any. In any event, there was error in the ruling and from a consideration of the record as a whole, we strongly incline to the opinion that appellant was prejudiced thereby. When the court erroneously overrules a general demurrer to an answer instead of sustaining it and defendant, relying upon the court's ruling as to the sufficiency of his answer, is misled to his prejudice, he is entitled to have the case reversed in order that he may amend. Colonial Building & Loan Association v. Meyer (Tex. Civ. App.) 48 S. W.(2d) 729, and authorities cited.

■Although appellant did not except to the court's ruling and assigns no error thereon, it is uniformly held that the action of the court in sustaining or overruling general demurrers to pleadings is fundamental and may be reviewed on appeal without assignments of error. City of San Antonio v. Talerico, 98 Tex. 151, 81 S. W. 518; Suhre v. Kott (Tex. Civ. App.) 193 S. W. 417; Grayson County v. Harrell (Tex. Civ. App.) 202 S. W. 160; Eldora Oil Co. v. Thompson (Tex. Civ. App.) 230 S. W. 738; Morrison v. Western Union Telegraph Co. (Tex. Civ. App.) 35 S.W. (2d) 215; Barcus v. J. I. Case, etc., Co. (Tex. Civ. App.) 197 S. W. 478.

Notwithstanding the ruling of the court, testimony was admitted as to the value of several of the cars and there is evidence tending to show that they were not sold at the market value or even a fair value.

Throughout the motion the appellee insists that there is not a "scintilla of evidence" which even tends to show any unfairness, willfulness, or wantonness on the part of the appellee company in disposing of any of the cars. We cannot assent to this. Terrell testified that he had made an agreement with a party by the name of Downing, who was postmaster and druggist at the town of Newlin, for the purpose of selling him the Riley car for $800, with a small trade-in

difference. That Downing was to pay $500 or $600 of the purchase price in cash and that Terrell had agreed to deliver the car on a certain date, but that the representative of the appellee company took the car away from him on the day agreed for delivering it to Downing and when he informed McCormick, the appellee's representative, of his agreement to sell Downing and to deliver the car the next day and requested McCormick to let him close the deal, the latter said, "We can't do it" and took the car with him. The record shows that McCormick subsequently sold the Riley car for $425. From this testimony the jury might have concluded that McCormick acted arbitrarily and unfairly and as a result of his conduct the car was sacrificed and Terrell deprived of the difference between the price received by McCormick and the price which Downing agreed to pay.

██ We think the pleading was sufficient to charge a gross breach of duty on the part of the company in the manner in which the power of sale was exercised by it. The appellant did not use the words "fraudulently" or "wrongfully" in attacking the manner of the sale and made no specific charge of illegal conversion in connection with the sales of the cars. The rule is that as against a general demurrer to a pleading, every reasonable intendment must be indulged by the court in favor of its sufficiency. The specific charge is that the cars were sold at a price which amounted to a sacrifice of them and that the appellee willfully and wantonly disposed of them at a price that was not reasonable and fair. To do a thing wantonly is to do it intentionally, with design, without excuse, and under circumstances evincing a reckless disregard of the lawful rights of others. Hardman v. Brown, 77 W. Va. 478, 88 S. E. 1016.

"The term 'wantonly' implies turpitude; that the act done is of willful, wicked purpose." North Carolina v. Vanderford (C. C.) 35 F. 282, 287; State v. Massey, 97 N. C. 465, 2 S. E. 445. An act to be done wantonly "must be done intentionally and by design, and without excuse, and under circumstances evincing a lawless and destructive spirit." Branch v. State, 41 Tex. 622.

See, also, Corrigan, Lee & Halpin v. Heubler et al. (Tex. Civ. App.) 167 S. W. 159; Indemnity Insurance Co. of North America v. Scott (Tex. Civ. App.) 278 S. W. 347; Alley v. Samples (Mo. App.) 194 S. W. 513.

It is said in 8 R. C. L. 591, § 135: "The terms recklessness, wantonness and willfulness ex vi termini, imply a knowledge and present consciousness that injury must result from a wrongful act done or from a duty omitted."

██ While the appellee's witness McCormick was testifying as to the value of the Essex automobile, having testified that he had repossessed it and sold it on the 12th. day of March, 1930, for $100, which was its cash market value at that time, appellant's counsel undertook to cross-examine him upon that point. It had been shown that the car had sold for $703 in July, 1929, and that it was a 1929 model. Appellant's counsel asked the witness: "Did that car reduce in value from July, 1929, to that time $603.00?" Objection was made that the question was argumentative. The court sustained the objection. Appellant's counsel then said: "We propose to show by this witness. * * *" Appellee's counsel interposed as follows: "I object to any proposals in the presence of the jury." This was not ruled upon. Appellant's counsel stated that he wanted to see what the witness would say about the decline in the price and excepted to the ruling of the court and offered to ask the same question with reference to all four of the cars and the court replied: "All right, they speak for themselves."

McCormick was testifying as an expert upon the value of the secondhand cars and we think the court erred in denying the appellant the right of cross-examination.

This court said in Pecos & N. T. Ry. Co. v. Porter, 156 S. W. 267, 274:

"It appears from the record that on direct examination the witness had been shown a list of goods belonging to his deceased brother and which had been included in the shipment and had testified generally that the goods in the list were of the value of $350, and appellant's counsel sought by cross-examination to have the witness testify particularly as to the value of each article named in the list as a test of the accuracy and truthfulness of the witness' statements and for the purpose of showing his credibility. We think he was entitled to that right. The purpose of a cross-examination is to sift and to modify and have the witness explain what has been said on his direct examination, and if the witness by this process can be discredited and the weight of his testimony weakened, the right should not be denied. 'The benefit of cross-examination is an essential condition to the reception of direct testimony. That is to say, testimony is not admissible if the party against whom it is to be used or those in privity with him have no opportunity of cross-examining the witness. The right being a substantial and a very important one, it is error to restrict it so far as to prevent the cross-examining party from going fully into all matters connected with the examination in chief.' Thompson on Trials (2d Ed.) § 406. The author, quoted further, says, 'A witness may be cross-examined as to his examination in chief in all its bearings and as to whatever goes to explain or modify what he has stated in his examination in chief, and prejudice will be

presumed where this right is denied.' Martin v. Elden, 32 Ohio St. 282. 'Where a witness has on his examination in chief given his opinion as to value, he may be cross-examined in full respecting his reasons for such opinion, and here the rule applies that great latitude should be allowed in cross-examination.' Mo., etc., Ry. Co. v. Haines, 10 Kan. 439. * * * This question has also been considered and the rules above announced followed by our state courts in the following cases: P. & G. Ry. Co. v. Kirby, 42 Tex. Civ. App. 340, 94 S. W. 173; Kirby v. P. & G. Ry. Co., 39 Tex. Civ. App. 252, 88 S. W. 281; M. K. & T. Ry. Co. v. Rich, 51 Tex. Civ. App. 312, 112 S. W. 114; Dittman v. Weiss [Tex. Civ. App.] 31 S. W. 67; Ft. Worth & D. C. Ry. Co. v. Travis, 45 Tex. Civ. App. 117, 99 S. W. 1141."

See, also, Labbe v. Corbett (Tex. Sup.) 6 S. W. 812; O'Connell v. Storey (Tex. Civ. App.) 105 S. W. 1174; 28 R. C. L. 600, § 189.

The original opinion is withdrawn.

For the reasons stated the motion is overruled and the judgment is reversed and the cause remanded.