### WESTERN UNION TELEGRAPH COMPANY v. W. O. CAMPBELL.

Decided December 21, 1905.

**1.—Filing Amendment in Vacation—Failure to Give Notice—Removal of Causes.**

In his original petition plaintiff sued for $5,000 damages. By amendment filed in vacation the damage alleged was reduced to $1,999. No notice was given defendant of the filing of the amendment. On the first day of the return term of court the defendant presented its petition, affidavit and bond for removal of the cause to the Federal Court. Plaintiff contested the petition for removal and presented to the court his amended petition filed in vacation.

Defendant moved to strike out because no notice of its filing had been given. This motion was overruled, and the petition for removal was refused. Held, there was no error in the ruling.

**2.—Death Message—Delay.**

Facts considered and held sufficient to support the finding of the jury that the defendant was guilty of negligence.

**3.—Pleading—Charge.**

By the language of the petition the claim for damages is restricted to the anguish suffered by plaintiff's wife during the delay between the receipt of the message and the start on her journey to her wounded brother. This would not authorize a charge permitting a recovery for anguish suffered by the wife after she started on the journey.

**4.—Notice of Relationship.**

The defendant had notice that the parties were brother and sister; it was thereby charged with notice that they might be bound to each other by the strongest ties of affection and the consequent anguish which might result from delay in receipt of the message.

**5.—Charge—Weight of Evidence.**

A charge is error as being upon the weight of evidence which specially points out any part of the evidence and tells the jury they should consider it in arriving at their verdict.

Appeal from the District Court of Nacogdoches County. Tried below before Hon. R. W. Simpson.

*Young. & Stinchcomb, N. L. Lindsley* and *Geo. H. Fearons,* for appellant.—In support of the first, second and third assignments of error, considered in the opinion, cited, Rev. Stats., art. 1188.

In support of the fifth assignment of error, considered in the opinion, cited, Western Tel. Co. v. Byrd, 79 S. W. Rep., 40.

*Ingraham, Middlebrook & Hodges,* for appellee.

PLEASANTS, ASSOCIATE JUSTICE.—This is a suit by appellee against the appellant to recover damages for mental suffering caused his wife by the alleged negligence of the appellant in failing to transmit and deliver with reasonable diligence a telegram informing Mrs. Campbell that her brother had been fatally shot and requesting that she come to him at once.

The amended petition upon which the case was tried in the court below alleges that about 3 o'clock p. m., on May 14, 1903, W. R. Watson, a brother of plaintiff's wife, Minnie Campbell, delivered to defendant's agent at Arcadia, Louisiana, the following telegram to be transmitted and delivered to plaintiff at Garrison, Texas:

"May 14, 1903.

W. O. Campbell, Garrison, Texas.
    Bob fatally shot. Want Minnie at once.
                                (Signed) W. R. Watson."

That the towns of Arcadia and Garrison are only 120 miles distant from each other, and that if said message had been promptly transmitted it would have reached plaintiff in a few minutes after it was despatched

from Arcadia, but that on account of defendant's negligence in failing to promptly transmit same it was not delivered to him until about 9 o'clock a. m., on May 15, 1903; that if said message had been promptly transmitted plaintiff's wife would have taken the train which passed through Garrison at 3 o'clock a. m., on May 15 and have reached the bedside of her brother on the evening of that day, but on account of the delay in its transmission she had to wait until 3 o'clock a. m., on May 16 for a train to take her to Arcadia, and therefore did not reach her brother until three hours after his death.

Notice to the defendant of the relationship between Mrs. Campbell and her brother and the necessity for the prompt transmission of the message was also alleged. Damages are asked in the sum of $1,999 for mental anguish and nervous prostration suffered by Mrs. Campbell as a result of the alleged negligence of the defendant.

Defendant answered by general demurrer and general denial, and by special plea in which it is averred that the message was not delivered to it until 6:15 o'clock p. m., on May 14, 1903, and that it was promptly transmitted through its regular relay offices at New Orleans, Louisiana, and Dallas and Houston, Texas, and was received at its Houston office at 7 o'clock p. m., on said date, but could not be transmitted to Garrison until the next morning because the office at that place had been closed for the day; that the office hours at said last named office were from 8 o'clock a. m., to 7 o'clock p. m., and that such hours were reasonable, and that there was no inexcusable delay at any of said offices in the transmission of said message.

There was a jury trial in the court below which resulted in a verdict and judgment in favor of plaintiff in the sum of $500.

Plaintiff's original petition alleged the damages sought to be recovered to be the sum of $5,000. The amended petition by which the claim for damages was reduced to $1,999 was filed in vacation and no notice of its filing was given appellant.

Upon the first day of the term of court next succeeding the institution of the suit appellant, without knowing that the amendment reducing the amount of plaintiff's claim had been filed, presented its petition, affidavit and bond for the removal of the cause to the Circuit Court of the United States for the Eastern District of Texas, at Tyler, Texas. These papers were in due and proper form and upon their face entitled appellant to have the cause removed as requested. When they were filed and presented to the court appellant asked that the order of removal be entered. To this request appellee objected and stated that he desired to contest appellant's right to the removal, and asked leave to file an amended petition. The court granted appellee leave to amend, and upon a hearing of the contest of appellant's request for removal appellee presented to the court his amended petition filed in vacation, in which the amount claimed in the suit was reduced, as before stated, below the amount necessary to give the United States Court jurisdiction of the cause.

Upon the presentation of this amendment appellant moved to strike it out on the ground that no notice of its filing had been given. The trial court overruled the motion to strike out the amendment, and refused to order the removal of the cause as requested by appellant. The

first, second and third assignments of error complain of this ruling of the court.

We think there was no error in the ruling. The amended petition reducing the amount claimed by the plaintiff below the jurisdiction of the Federal Court, had been filed several days before the filing of the motion for removal, and although it was filed in vacation and no notice of its filing given appellant, it superseded the original petition and changed plaintiff's suit from one for $5,000 to one for less than $2,000, the amount necessary to give the appellant the right to remove the cause to the Federal Court.

Article 1188 of the Revised Statutes reads as follows:

"All parties to a suit may in vacation amend their pleadings, may file suggestions of death and make representative parties, and make new parties, and file such other pleas with the clerk of the court in which such suit is pending as they may desire. And any party may in vacation intervene in any suit pending such amendments and pleas, subject to be stricken out at the next term of the court on motion of the opposite party to the suit for sufficient cause shown or existing, to be determined by the court; provided that it shall be the duty of the party filing such pleading to notify the opposite party or their attorneys of the filing of such papers within five days from the filing of the same. All amendments to pleadings, pleas and pleas of intervention, must, when court is in session, be filed under leave of the court, upon such terms as the court may prescribe, before the parties announce ready for trial, and not thereafter."

This statute confers the right to file amended pleadings in vacation in express terms, and it is not clear, under any proper construction of the article, that the provision as to notice applies to any pleading mentioned other than pleas in intervention. It certainly can not be construed to mean that an amendment filed without notice should have no effect, and should be treated as a nullity. Of course the opposite party would be entitled to notice of the filing in vacation of an amendment setting up a new cause of action, or injecting new issues in the case, which would operate as a surprise and present a case he was not prepared to meet, and under such circumstances he would be entitled to a continuance at the cost of the party filing the amendment. District Court Rule 15; Batts Civil Statutes, p. 622.

It may be that appellant having no notice of the amendment could have relied upon his right to have the cause of action, as set up in the original petition, removed to the Federal Court, and not prepared his case for trial in the court below, and when he found that such amendment had been filed could have claimed surprise and had the cause continued and the costs of the proceedings taxed against appellee; but he made no such claim, and the only question presented by the assignments we are considering, is whether the amendment should be treated as having no effect, or in other words, as a nullity. We know of no authority for so holding, and appellant has cited none.

There is evidence to support all of the material allegations of plaintiff's petition. Upon the issues as to the time the message was delivered to defendant and the diligence used in its transmission the evidence is as follows:

W. R. Watson, who sent the message to plaintiff, testified: "I filed this message with the agent of the Western Union Telegraph Company, at Arcadia, at about 3:20 o'clock p. m., of May 14, 1903." The witness then gives a detailed statement of all that was done between the time he learned of his brother being shot and the filing of the message. With regard to filing the message he further said: "Mr. G. S. Boyd was the manager for the Western Union Telegraph Company at Arcadia at that time. I filed the message with Mr. G. S. Boyd, and when I gave it to him I told him that my brother was fatally shot and that I wanted to wire for Mrs. Campbell. I wrote the message and then asked him if he could get it to Garrison in time for her to get it that evening. He looked at his watch and said he could. He said that he then had the wire to New Orleans and that he would send the message there and there would be nothing to hinder her from getting it. I stayed in the office while the message was being sent." Again he said: "I handed the message to G. S. Boyd. J. T. Taylor was in the office at the time. J. T. Taylor was Boyd's assistant. I stayed there until the message was transmitted over the wire. I gave Mr. Boyd the message and he gave it to Mr. Taylor at once and Mr. Taylor sat down and sent the message immediately. I saw him working at it. I mean by that I saw him sit down to the telegraph instrument with the message and begin working the instrument and when he got up he told me he had sent the message. This was about five minutes after I filed the message. When I handed in the message I asked what it was worth to send it and Taylor said that he then had the wire and could get it off at once and that he would tell me what it was worth after he sent it. When he got through with sending the message he told me what it was worth and I paid it. He said that he had gotten the New Orleans wire and had sent the message to New Orleans."

On September 14, 1904, G. S. Boyd gave his deposition for the plaintiff in which the following question was asked and answer thereto made: Question—"If in answer to the first interrogatory you say you were telegraph operator at the Arcadia, Louisiana, office on the 14th of May, 1903, then please state whether or not you received a message from W. R. Watson on said date, about 3 o'clock in the afternoon, to be sent to W. O. Campbell, at Garrison, Texas, as follows: 'Bob fatally shot. Want Minnie at once.'" Answer—"Yes."

The original message was introduced in evidence by the defendant and there appears an endorsement thereon showing that it was filed in the Arcadia office at 6:15 p. m., May 14, 1903. J. T. Taylor, the operator at said office who transmitted the message, testified:

"This message was filed in the Arcadia office by W. R. Watson at 6:15 p. m., May 14, 1903. I know this because I noted the time on the message when it was filed. I have no personal recollection of putting the figures on the message, but know that I put the time thereon when the message was filed because I always do. I got the time either from the station timepiece or from my watch. I time all messages when they are filed and put the accurate time and get it from a timepiece. The 6:15 p. m. on the message denotes the time it was filed, which was 15 minutes after 6 o'clock on the evening of May 14, 1903. I transmitted the message from Arcadia to New Orleans at 6:20 p. m. on May 14,

1903, and know that to be the time I transmitted it from the record on the message."

G. S. Boyd testified for the defendant that the message introduced in evidence was the original message filed in the Arcadia office and that the endorsement thereon showing that it was filed at 6:15 p. m. was made by Watson and is correct. In answer to question by plaintiff's counsel asking him why he testified in his deposition previously taken by plaintiff that the message was received about 3 o'clock p. m., he says:

"I made the statement 'about 3 o'clock' in my previous answer from the idea that was advanced in the interrogatories; stating that it was 3 or 3:15 p. m., which I presumed was the correct time. The original message with its checks on it had been sent away from my office and I had no record of it and I made the statement 'about 3 o'clock.'"

The operator who handled the message in the New Orleans office testified that it was received at that office at 6:17 p. m. and transmitted to Dallas at 6:41 p. m. This is shown by the endorsement made on the office copy of the message.

The operator at Dallas testified that it was received at that office and transmitted to Houston at 7 o'clock p. m.

The chief operator at Houston testified: "The message was received at Houston at 6:58 p. m. by an operator handling the Dallas wire and before it could be written down and sent to the operator handling the wire from Houston to Garrison the operator at Garrison closed his office for the night."

There was evidence produced by the defendant which would sustain a finding that the delays in the transmission of the message at the New Orleans and Dallas offices were not unreasonable and that the office hours at Garrison were reasonable.

We think this evidence raises the issue of whether the appellant was guilty of negligence in failing to use ordinary care to promptly transmit the message from its New Orleans and Dallas offices, and therefore appellant's assignment complaining of the refusal of the court to instruct the jury that if they believed from the evidence that the message was not received for transmission at Arcadia until 6:15 p. m. on May 14, they should find for the defendant, can not be sustained. The evidence shows that the message reached Houston only a few minutes too late to be transmitted to Garrison before the office at that place closed for the night, and that it remained 20 minutes in the New Orleans office and about the same time in the office at Dallas. This may not have been an unreasonable delay, and several witnesses for appellant testified that in their opinion it was not, but this question was properly left for the jury to determine under all the circumstances shown by the evidence.

The paragraph of the petition in which the injury to plaintiff's wife for which damages are sought to be recovered is alleged is as follows:

"Your petitioner further shows that his wife, Minnie Campbell, reached her brother Bob about three hours after he died, and had the message been promptly delivered, she would have reached him about twenty-one hours before he died; that the said Minnie Campbell and her brother, Bob Watson, were unusually attached to each other from child-

hood, and that he died calling for her; that had it not been for the negligent delay of the said message, she would have reached her brother and had the consolation of talking with him before he died, and of being with him during his last hours; that it was the direct fault of the said Western Union Telegraph Company or its agent or agents that the message did not reach her in time, and because of such negligence the said Minnie Campbell was compelled to wait twenty-one hours before starting upon her journey to her dying brother, during which time she suffered great distress of mind, mental anguish and nervous prostration to her damage one thousand nine hundred and ninety-nine dollars."

Under the fifth assignment appellant contends that this allegation of damage did not authorize the court to instruct the jury that in event they found for plaintiff they should award damages for the anguish suffered by Mrs. Campbell as a result of her failure to reach her brother before his death.

The language of the petition restricts the claim for damages to that resulting from the anguish suffered by Mrs. Campbell during the time intervening between the time plaintiff received the message and the time she started to her brother. This would preclude any recovery for anguish suffered by her after she started on the journey. She did not learn of her brother's death until she reached Arcadia and she could not have suffered anguish as a result of her failure to reach him before he died until she learned of his death. Of course, the anguish suffered by her during the time stated in the petition may have largely resulted from the fear that she would not be able to see her brother before his death, but anguish resulting from anticipation of evil is not the same as that which follows its realization. It may be that with some temperaments the one may be as great as the other, but this would not authorize the recovery of damages for anguish produced by the one cause when the petition only claims damages for anguish due to the other.

The allegations of the petition above set out were sufficient to admit proof of the fact that Mrs. Campbell and her brother were unusually fond of each other, and the assignments complaining of the admission of testimony to that effect are not well taken. The telegram itself was sufficient to put the appellant upon notice of the relationship between the parties, and in addition to this the evidence shows that the sender of the message informed appellant's agent who received it for transmission of the circumstance which rendered its prompt transmission important. The appellant having notice that the parties were brother and sister it was thereby charged with notice that they might be bound to each other by the strongest and tenderest ties of affection and that the sister would suffer the deepest and keenest anguish if she failed to receive the message in time to reach her brother before his death. If they had had very little affection for each other that fact might have been shown by the appellant as a circumstance tending to lessen the damages sustained by Mrs. Campbell, and we think it equally clear that under her pleadings she was entitled to show the great affection she had for her brother as a circumstance tending to show the extent of her suffering and consequent damages.

The testimony as to the effect that the announcement of her brother's death had upon Mrs. Campbell was not admissible under the pleading

above set out, which restricts the damage claimed to that resulting from the anguish suffered by her before she knew of her brother's death, but under proper allegations we think the evidence would be admissible. In a suit for the recovery of damages for mental anguish resulting from the failure of a sister to reach the bedside of her brother before his death the effect which the announcement of the death of the brother, before the sister reached him, would have upon her would be evidence of the anguish suffered by her because of her failure to reach him before his death. Of course the very announcement would cause her anguish, but as the anguish caused by the realization that she had not been able to get to him before his death could only result after knowing of his death, it necessarily includes the anguish due to the knowledge of that fact.

The records of appellant's Houston office show that the message was transmitted from that office to the Garrison office at 8:06 a. m. on May 15, and the testimony of the operator at Garrison is that the records of his office show that it was received there at 8:40 a. m. on said date.

The appellant requested the court to charge the jury as follows: "You are charged that as to whether the message was received at the defendant's Garrison office at 8:46 a. m. of May 15, 1903, does not affect the question of whether or not the defendant is liable in this case and you will so consider."

This charge was given by the court with the following qualification: "You may look to the discrepancy, if any, as to time received at Garrison, as well as any and all other evidence, if any, in passing on the weight to be given to the testimony in the case."

The fourteenth assignment complains of the qualified charge given by the court as being upon the weight of the evidence. The assignment must be sustained. It is an infringement of the rule prohibiting a charge upon the weight of the evidence to specially point out in the charge any part of the evidence and tell the jury that they should consider it in arriving at their verdict. The effect of such a charge is to give the evidence so pointed out undue weight and to lead the jury to believe that the court regards it as entitled to special consideration upon the issue submitted for their determination. In view of the conflicting state of the evidence upon the question of the time at which the message was delivered to appellant, the charge complained of was, we think, clearly calculated to injure appellant. (Goodbar v. City Nat. Bank, 78 Texas, 461.)

It is unnecessary to discuss the remaining assignments. None of them in our opinion point out any error and they are all overruled.

For the errors before indicated the judgment of the court below is reversed and the cause remanded.

*Reversed and remanded.*