PECOS & N. T. RY. CO. v. PORTER et al.

(Court of Civil Appeals of Texas. Amarillo. March 22, 1913. Rehearing Denied April 26, 1913.)

1. PROCESS (§ 6*)—AMENDMENTS—NEW CAUSE OF ACTION.

The dropping of one plaintiff from a suit, or the adding of another plaintiff, or the elimination of a defendant improperly joined, by filing an amendment to the petition, does not constitute a new cause of action or an abandonment of the original action, and additional service of process is not necessary.

[Ed. Note.—For other cases, see Process, Cent. Dig. § 5; Dec. Dig. § 6.*]

2. ASSIGNMENTS (§ 121*)—INJURY TO FREIGHT —RIGHT OF ACTION.

Part owners of a car load of freight, damaged during transit, may assign their claim to one of their number, who may sue for and recover the entire damages in his own name as assignee.

[Ed. Note.—For other cases, see Assignments, Cent. Dig. §§ 200–205; Dec. Dig. § 121.*]

3. ABATEMENT AND REVIVAL (§ 41*)—ASSIGNMENT OF CAUSE OF ACTION.

An assignment of a cause of action pending the action is proper and does not necessitate a change of parties.

[Ed. Note.—For other cases, see Abatement and Revival, Cent. Dig. §§ 212–220; Dec. Dig. § 41.*]

4. PLEADING (§ 240*)—AMENDMENTS—NOTICE.

Under Rev. St. 1895, art. 1188, giving the right to file amended pleadings in vacation, a party is not entitled to notice of the filing in vacation of an amendment not setting up a new cause of action or injecting new issues, but which merely omits some of the plaintiffs and defendants.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 636–641; Dec. Dig. § 240.*]

5. COURTS (§ 489*)—STATE COURTS—JURISDICTION.

The state courts have jurisdiction of an action against a carrier for the conversion of an interstate shipment, though the shipper has filed a complaint with the Interstate Commerce Commission and the carrier has appeared and answered.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 1324–1330, 1333–1341, 1372–1374; Dec. Dig. § 489.*]

6. ABATEMENT AND REVIVAL (§ 12*)—PENDENCY OF OTHER SUIT.

A plea of another suit pending, based on the pendency of a suit in a federal court, is not sustainable.

[Ed. Note.—For other cases, see Abatement and Revival, Cent. Dig. §§ 87–91, 94, 95, 98; Dec. Dig. § 12.*]

7. EVIDENCE (§ 474*) — OPINION EVIDENCE — COMPETENCY OF WITNESSES.

A witness, who stated on direct examination that he knew the market value of property, and not cross-examined as to his knowledge thereof, was properly permitted to testify to market value.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2196–2219; Dec. Dig. § 474.*]

8. CARRIERS (§ 94*)—CONVERSION OF FREIGHT —MEASURE OF DAMAGES.

The measure of damages for the conversion by a carrier of household and kitchen furniture is not market value, but actual value, and, to prove value of household and kitchen furniture, it is not necessary to first establish the fact that there was a market value.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 367–395, 456; Dec. Dig. § 94.*]

9. EVIDENCE (§ 474*) — OPINION EVIDENCE — COMPETENCY OF WITNESSES.

A witness who positively testifies that he knows the value of household and kitchen furniture is competent to testify to actual value.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2196–2219; Dec. Dig. § 474.*]

10. CARRIERS (§ 26*)—FREIGHT RATE—INTERSTATE RATE.

Where no specific rate from point of origin to destination of a through shipment is provided, and no specific manner of constructing the combination rate for it is prescribed, the lowest combination of rates applicable over the route is the lawful rate for the shipment.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 67–82; Dec. Dig. § 26.*]

11. CARRIERS (§ 26*)—FREIGHT RATE—INTERSTATE RATE.

Where a commodity rate is named in a tariff between specified points, the commodity rate is the lawful rate and the only one that can be used with relation to such traffic between the designated points, though a class rate or some combination may make a lower rate.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 67–82; Dec. Dig. § 26.*]

12. CARRIERS (§ 91*) — CONVERSION OF FREIGHT—LIABILITY.

Where a terminal carrier of an interstate shipment, through a mistake as to the rate, refused to deliver the goods until a higher rate than it was entitled to charge had been paid, the refusal amounted to a conversion, especially where the shipper, on the correct rate being ascertained, promptly tendered it, and the measure of damages was the value of the goods at the time of such refusal and not at the subsequent time of tender by the shipper.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 338–355; Dec. Dig. § 91.*]

13. TRIAL (§ 256*)—INSTRUCTIONS—REQUESTS —NECESSITY.

A carrier, in an action for the conversion of freight, may not complain of any error in an instruction fixing the date of the conversion,

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

in the absence of a requested charge correctly fixing the date.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 628–641; Dec. Dig. § 256.*]

14. CARRIERS (§ 94*) — CONVERSION OF FREIGHT — ACTIONS — EVIDENCE — ADMISSIBILITY.

In an action against a carrier for conversion of freight, based on refusal to deliver without payment of excessive charges, evidence that the carrier claimed a specified sum to be the true rate per hundred pounds on the shipment was admissible to show what rate had been demanded.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 367–395, 456; Dec. Dig. § 94.*]

15. APPEAL AND ERROR (§ 204*)—QUESTIONS REVIEWABLE — QUESTIONS NOT RAISED IN TRIAL COURT.

An objection to evidence not made in the trial court cannot be raised on appeal.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1149, 1258–1272, 1274–1278, 1280, 1569; Dec. Dig. § 204.*]

16. EVIDENCE (§ 377*)—PRIVATE WRITINGS—ADMISSIBILITY.

Where, in an action for the conversion of a car load of freight, a witness identified and verified a list of the goods, the list was properly considered by the jury.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 1647; Dec. Dig. § 377.*]

17. EVIDENCE (§ 341*) — DOCUMENTARY EVIDENCE—FINDINGS OF INTERSTATE COMMERCE COMMISSION.

A certified copy of the findings, opinion, and judgment of the Interstate Commerce Commission is, by Interstate Commerce Act (Act Feb. 4, 1887, c. 104, § 14, 24 Stat. 384 [U. S. Comp. St. Supp. 1911, p. 1297]), admissible in evidence in an action involving the question of the true rate for an interstate shipment.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1289–1292; Dec. Dig. § 341.*]

18. EVIDENCE (§ 502*)—OPINION EVIDENCE—EXAMINATION—CROSS-EXAMINATION.

Where a witness testified on direct examination as to the value of property alleged to have been converted, the sustaining of objections to questions on cross-examination, asked to test the accuracy and truthfulness of the witness and to show his credibility, was reversible error, under the rule that where a witness has, on his examination in chief, given his opinion as to value, he may be cross-examined in full as to his reasons for such opinion.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2306, 2307; Dec. Dig. § 502.*]

19. WITNESSES (§ 268*)—CROSS-EXAMINATION—RIGHT TO CROSS-EXAMINE.

The right to cross-examine a witness is a substantial one, and it is error to so restrict it as to prevent the cross-examining party from going fully into all matters connected with the examination in chief.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 931–948, 959; Dec. Dig. § 268.*]

20. COMMERCE (§ 88*)—INTERSTATE COMMERCE COMMISSION—DECISION—CONCLUSIVENESS.

A decision of the Interstate Commerce Commission fixing the rate for an interstate shipment is res judicata as between the shipper and the carrier appearing before the commission, and is conclusive in an action against the carrier for conversion, based on its refusal to deliver without the payment of excessive charges.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. §§ 139, 141; Dec. Dig. § 88.*]

Appeal from District Court, Deaf Smith County; D. B. Hill, Judge.

Action by G. H. Porter and others against the Pecos & Northern Texas Railway Company. From an adverse judgment, defendant appeals. Reversed and remanded.

See, also, 56 Tex. Civ. App. 479, 121 S. W. 897.

Madden, Trulove & Kimbrough, of Amarillo, Carl Gilliland, of Hereford, and Terry, Cavin & Mills, of Galveston, for appellant. Knight & Slaton and S. J. Dodson, all of Hereford, for appellees.

HALL, J. On January 24, 1907, Guy H. Porter filed in the district court of Deaf Smith county this suit against the Ft. Worth & Denver City Railway Company, the St. Louis & San Francisco Railway Company, and appellant, alleging that about the 11th day of January, 1907, he delivered to the defendants at Fletcher, Okl., one car loaded with horses, hogs, farm implements, household goods, etc., to be transported to Bovina, Tex.; that the Frisco road contracted with plaintiff to carry the goods and deliver them at Bovina, for an express consideration of 37 cents per hundred pounds, the agreement being in writing and signed by both parties; that there being no scales at Fletcher, the weight of the car of goods, etc., was estimated at 20,000 pounds and the contract price or rate of freight, amounting to $74, was prepaid; that the St. Louis & San Francisco Railway transported and delivered the car to the Ft. Worth & Denver City Railway at Quanah, Tex., which company accepted and transported the same to Amarillo, Tex., under a written contract, and at Amarillo delivered the same to the Pecos & Northern Texas Railway Company, which accepted the shipment and made a contract in writing with the plaintiff to deliver the car to plaintiff at Bovina, Tex., and when the car reached Bovina it was found there was 4,000 pounds excess weight, making $14.80 additional freight chargeable under the contract rate of 37 cents, which additional amount appellee tendered and offered to pay, but that the defendant (appellant herein) refused to accept the amount and demanded freight at the rate of 67 cents per hundred, or about $90, which appellee refused to pay. The petition alleges the value of the property to be $2,500, and claims expense in the sum of $75.05, and prays for actual and exemplary damages. On February 22, 1908, without other change than adding two more names as plaintiffs to the case, a first amended original petition was filed in which G. H. Porter, B. M. Porter, and L. Cameron are named as plaintiffs. This amendment sets up the same cause of action as the original petition filed by G. H. Porter alone. On March 3, 1908, plaintiffs filed a second amended original petition against the

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

same three defendants, slightly changing the form of the allegations in the former pleadings, but seeking recovery on account of the same car and the refusal to deliver. The Frisco Company made no appearance. The Denver Railway and appellant answered, demurring to the petition. This demurrer was sustained by the trial court, and, on writ of error to the Court of Civil Appeals for the Second District, the judgment of the trial court was reversed and the cause remanded. See Porter v. Pecos & Northern Texas Ry. Co., 56 Tex. Civ. App. 479, 121 S. W. 897. On the 28th day of October, 1911, plaintiffs' third amended original petition was filed, in which no other mention is made of the names of G. H. Porter and L. Cameron as parties to the suit, and naming the Pecos & Northern Texas Railway Company as the sole defendant. This third amended original pleading presents a cause of action by B. M. Porter as plaintiff against appellant alone. The cause of action set out therein is substantially the same as contained in the former original pleadings. Upon the filing of this pleading, appellant filed a motion to dismiss or to continue for want of service, claiming that it was entitled to service because the pleading was a new suit and that the suit as originally brought had been abandoned and abated. Its motion being overruled, appellant filed a first amended original answer, containing demurrers, general and special, plea to the jurisdiction, general denial, and special pleas. During the trial, plaintiff was permitted by the court to file a fourth amended original petition, being substantially the same cause of action before declared upon, claiming the conversion of divers and sundry articles described in the lists and exhibits attached to the petition. These lists had previously been attached to the third amended pleading. After, the filing of this fourth amendment by plaintiff B. M. Porter, the defendant filed a supplemental answer, containing demurrers and also filed a motion to retax the costs. The demurrers were overruled.

[1] The first assignment of error complains of the court's action in overruling defendant's alternative motion to dismiss or continue for service, because the suit, as originally brought, had been abandoned, and because no notice of the new suit and of the amended petition filed in vacation, had been served on defendant. We think there was no error committed by the court in overruling this motion. Dropping the name of one plaintiff from a suit, by an amendment of the petition, does not state a new cause of action nor abandon the suit as originally filed. Mo. Pac. Ry. Co. v. Watson, 72 Tex. 631, 10 S. W. 731; Rabb v. Rogers, 67 Tex. 335, 3 S. W. 303; Pridgen v. McLean, 12 Tex. 420 Neither does adding the name of another plaintiff by an amended petition change the cause of action. Roberson v. McIlhenny,

59 Tex. 617. Elimination of a defendant improperly joined may be by amendment and does not constitute a new cause of action. Texas Midland R. R. Co. v. Cardwell, 67 S. W. 157.

[2, 3] There was nothing improper in the assignment by the part owners of the contents of the car to the appellee B. M. Porter, and he had the right to maintain the suit for the recovery of the entire damages in his own name in the capacity of assignee. T. & P. Ry. Co. v. Davis, 93 Tex. 378, 54 S. W. 381, 55 S. W. 562, and while the assignment or cause of action during the pendency of the suit is proper, it does not necessitate a change of parties. Bailey v. Laws, 3 Tex. Civ. App. 529, 23 S. W. 20; Drouilhet v. Pinckard, 42 S. W. 135; Ostron v. Layer, 48 S. W. 1095; Seiter v. Marschall (Sup.) 147 S. W. 226.

[4] Appellant's remaining contention under this assignment is disposed of in Western Union Telegraph Co. v. Campbell, 41 Tex. Civ. App. 204, 91 S. W. 312–314, in which Pleasants, Justice, quoting article 1188, Revised Statutes of 1895, says: "This statute confers the right to file amended pleadings in vacation in express terms, and it is not clear under any proper construction of the article that the provision as to notice applies to any pleading mentioned other than pleas in intervention. It certainly cannot be construed to mean that an amendment filed without notice should have no effect and should be treated as a nullity. Of course, the opposite party would be entitled to notice of the filing in vacation of an amendment setting up a new cause of action or injecting new issues in the case, which would operate as a surprise and present a case he was not prepared to meet, and, under such circumstances, he would be entitled to a continuance at the cost of the party filing the amendment."

[5] The second assignment insists that its plea to the jurisdiction of the state court should have been sustained because it fully appeared from the pleadings and the testimony that the federal court alone had jurisdiction of the controversy. It appears from the record that this suit was filed about 10 days after the car of stock and household goods arrived at Bovina; that on October ———, 1907, G. H. Porter, L. Cameron, and the plaintiff, as joint complainants, filed their complaint with the Interstate Commerce Commission, and each of the railway companies hereinbefore named appeared and answered before the Commission. The Commission made an award, and on January 9, 1909, plaintiffs filed in the federal court at Amarillo a suit to enforce the award, which suit is yet pending. These facts were offered in support of the plea to the jurisdiction and in abatement; and the questions arising under this assignment were also raised by demurrers, all of which were overruled,

and the case proceeded to trial on the merits. Appellant insists, and it cannot be denied, that the freight in question must be classed as interstate commerce.

On the former appeal, the Second Court of Appeals held that the cause of action, as shown by the petition, was simply a suit for conversion (56 Tex. Civ. App. 479, 121 S. W. 897), and that the matter presented for adjudication was not one exclusively within the jurisdiction of the federal court or to be passed upon by the Interstate Commerce Commission. As we understand the duties, powers, and authority of the Interstate Commerce Commission, it has no right to adjudicate a question of damage for conversion, and the issue raised by this assignment has been, in our opinion, settled adversely to appellant's contention. In St. Louis, San Francisco Railway Co. v. Roff, 128 S. W. 1194, Bookout, Justice, after announcing the rule that the question of jurisdiction between the state and federal courts is one to be determined by the averments of the petition and not by the federal questions presented defensively by the answer, held that, in an action by a shipper against a railroad to recover an alleged rebate on interstate shipments, where the sole issue was as to the meaning of a tariff adopted by defendant, which interpretation is not affected by the Interstate Commerce Law, does not present a federal question, conferring jurisdiction exclusively on the federal courts, and that the state courts have jurisdiction to interpret such a tariff, though it is interstate and established and required by the act of Congress; and we think the issue has been further definitely settled by the Supreme Court of the United States in G., H. & S. A. Ry. Co. v. Wallace, 223 U. S. 481, 32 Sup. Ct. 205, 56 L. Ed. 516, where Justice Lamar, delivering the opinion of the court, said: "The real question, therefore, presented by this assignment of error, is whether a state court may enforce a right of action arising under an act of Congress. Statutes have no extraterritorial operation, and the courts of one government cannot enforce the penal laws of another. At one time there was some question both as to the duty and power to try civil cases arising solely under the statutes of another state, but it is now recognized that the jurisdiction of state courts extends to the hearing and determination of any civil and transitory cause of action created by a foreign statute, provided it is not of a character opposed to the public policy of the state in which the suit is brought. Where the statute creating the right provides an exclusive remedy to be enforced in a particular way or before a special tribunal, the aggrieved party will be left to the remedy given by the statute which created a right. But jurisdiction is not defeated by implication. And considering the relation between the federal and state government, there is no presumption that Congress intended to prevent state courts from exercising the general jurisdiction already possessed by them and under which they had the power to hear and determine causes of action created by federal statute. On the contrary, the absence of such provision would be construed as recognizing that where the cause of action was not penal, but civil and transitory, it was to be subject to the principles governing that class of cases and might be asserted in a state court as well as those in the United States. This presumption would be strengthened as to a statute like this, passed not only for the purpose of giving a right but of affording a convenient remedy." This language was used in discussing the Carmack Amendment to the Interstate Commerce Law and in our opinion is applicable to the question under consideration.

[6] Appellant's third assignment of error is that the trial court erred in overruling the railway company's plea in abatement because the plaintiff and his coshippers, having elected to proceed before the Interstate Commerce Commission, and the federal court invoking their jurisdiction and judgment in matters pertaining to the controversy, had no right to prosecute this cause before the state court; and the fourth assignment is that the court erred in overruling defendant's special demurrer to plaintiffs' fourth amended petition, to the effect that the petition was insufficient because it appeared therefrom that plaintiffs' right, if any, had been adjudicated, in that the petition shows that plaintiff had filed his claim before the Interstate Commerce Commission and had secured an award and that said award is outstanding. The record shows that the shippers, the appellees, did file a complaint before the Interstate Commerce Commission after delivery of their freight had been refused, setting up the facts and asking that the Commission determine what the correct rate should be; and it further appears that the complaint states the value of the goods and chattels contained in the shipment and asks that they be awarded that sum. So much of the complaint as invoked the aid of the Commission in awarding the complainants damages was manifestly improper, since under the Interstate Commerce Law that body has no authority to award damages for conversion and the report filed by the Commission shows that this request of the complaint was disregarded. It further appears that there was a suit for conversion filed by appellees in the federal court at Amarillo, after the filing of this suit; but the record shows that the federal court suit has been dismissed by appellees. Even if the federal court proceeding had not been dismissed, it was a suit pending in a foreign jurisdiction, and appellant's plea of another suit was not sustainable. I. & G. N. Ry. Co. v. Barton, 24 Tex. Civ. App. 122, 57 S.

W. 292; Harby v. Patterson, 59 S. W. 63. Both the third and fourth assignments are overruled.

[7] The fifth assignment is that the court erred in admitting in evidence, over defendant's objections, the eighth direct interrogatory, to the witness L. Cameron, and the answer of said witness for the purpose of proving the market value at Bovina of each animal in the car at the time of its arrival there or within a few days thereafter, and contends under this assignment that said witness had not sufficiently qualified himself as to his knowledge of the market value at Bovina at the time of the conversion to make the evidence admissible. The record shows that this witness testified, "There was a market value for such live stock at Bovina, Tex., of which I became acquainted soon after I arrived at Bovina," and his answer to the question following this stated the value of the live stock in detail. There was no cross-examination as to his knowledge of the market value. He states positively that he knew the market value. We are unable to learn from the record how his information was obtained, and we must presume that he had from proper sources and in a proper manner obtained the knowledge which qualified him to state such market value. As was stated by Judge Stayton, Chief Justice, in Hardin v. Sparks, 70 Tex. 429, 7 S. W. 769: "The presumption, in the absence of a statement to the contrary in a bill of exceptions, is that the court satisfied himself by proper inquiry as to the competency of the witness to testify as an expert, and the mere statement that the objection was on the ground that the witness had not shown himself qualified to testify as an expert is not enough to repudiate this presumption. A party who seeks to raise such question should show in a bill of exception, or in some proper manner, what examination, or that no examination, was made, to test the qualification of a witness to testify as an expert." So far as the record shows, this witness may have, upon the open market, at Bovina, upon his arrival there, bought and sold live stock of the kind and character involved in this suit and may have been eminently qualified thus, or in other ways, to answer the question. The question of the qualification of a witness to testify as an expert is one primarily for the trial judge, and unless it is clear from the record that his discretion has been abused to the prejudice of the complaining party, this court cannot revise the ruling.

[8, 9] By the sixth assignment, appellant complains that the court erred in admitting the interrogatory to the witness Cameron, and the answer, in which he testifies as to the actual value of the household goods. The petition alleges "that the articles of property contained in said car belonging to each of the owners thereof are fully set out and described, together with the value of each article, in Exhibits A, B, and C, hereto attached, and to which reference is here particularly made; and that the value of the property in said car was $3,000." The interrogatory complained of is as follows: "Did you have any household or kitchen furniture in said car, and, if so, state, if you can, the value of it at Bovina, Tex., at the time of its arrival, and if you answer in the affirmative, then give the actual value of each article of such household and kitchen goods at the time and place above indicated." Answer: "Yes, I had household and kitchen furniture in said car. Yes, I know the value, and for the actual value I refer you to the list attached." The objection urged to the interrogatory was that it called for, and the answer gave, the actual value of the property and plaintiff sued for the market value at Bovina; that the evidence is not supported by the pleadings and the witness does not qualify himself; and, further, it had not been shown by the witness that there was no market value for such property at Bovina. We think the witness showed himself qualified by his positive statement that he knew the value. Reference to the petition shows that he did not sue for the market value, but the allegation is one of "value" in general terms. In our opinion, it was not necessary, in order to prove value of the household goods, to first establish the fact that there was a market value for such property. It is settled in this state that the measure of damages for household and kitchen furniture (which is necessarily secondhand, if sold by the owner) is not the market value, but the actual value. I. & G. N. Ry. Co. v. Nicholson, 61 Tex. 550; Benedict v. C., R. I. & P. Ry. Co., 91 S. W. 811; Wells Fargo Express Co. v. Williams, 71 S. W. 314.

[10] It is also contended under this assignment that the court erred in permitting the plaintiff to prove the actual value of the household goods at the time the car arrived at Bovina, which was about January 13, 1907, because the true measure of damages is the value on November 9, 1907, at which time the record shows the goods were sold by appellant and immediately prior to the sale the correct amount of freight, as determined by the Interstate Commerce Commission, was tendered. This contention raises a question of considerable difficulty. The goods arrived in Bovina on January 13, 1907. Appellees had previously paid the freight at the rate of 37 cents per hundred pounds on an estimated weight of 20,000 pounds. After leaving Fletcher, Okl., the car was weighed, and it was ascertained that the true weight was 24,000, and upon arrival of the car at Bovina, appellees tendered the sum of $14.80, being the additional amount due for the 4,000 pounds excess at the agreed rate of 37 cents. This tender was refused by appellant's agent at Bovina, upon the ground that the proper rate was 67 cents, which appellees refused to pay. Appellant's agent subsequently named

a rate of 65 cents, and finally decided definitely upon a rate of 68 cents and refused to deliver the goods until the payment of the freight upon that basis. Whereupon, appellees, on the 19th day of October, 1907, as hereinbefore stated, filed their complaint with the Interstate Commerce Commission, and on January 5, 1909, the Interstate Commerce Commission decided that the correct rate between Fletcher, Okl., and Bovina, Tex., was 62 cents. In the month of November, 1907, the appellees tendered freight upon said shipment at the rate of 62 cents per hundred, which was refused by appellant unless appellees would also pay certain demurrage charges which had accrued during the controversy over the rate. The findings of the Interstate Commerce Commission are, in part, as follows: "(1) Rate charged by defendants on plaintiffs' shipment of emigrant outfit from Fletcher, Okl., to Bovina, Tex., of 68 cents per hundred pounds, found unreasonable to the extent that it exceeds the combination of locals of 41 cents per hundred pounds, now applying over the route the shipment moved. (2) Reparation awarded to complainants for excessive amount collected on their shipment of emigrant outfit, plus whatever amount was collected by sale for demurrage or warehousing. (3) The Pecos & Northern Texas Railway Company is required to keep in force for at least two years the local rate which now results in a combination rate of 41 cents per hundred pounds on emigrant outfit from Fletcher to Bovina. (4) The local rate at the time the shipment moved via the route it traversed was 62 cents per hundred pounds. This lawful rate was never quoted, assessed, or charged upon the shipment, and all rates that were quoted, assessed, or charged were excessive by reason of exceeding this lawful rate in addition to being excessive because unreasonable."

These findings were evidently adopted by the jury in the rendition of the verdict, and the Interstate Commerce Law makes them prima facie evidence of the facts therein declared. It appears from the report of the Commission that the rate per hundred pounds applicable to this shipment from Fletcher, Okl., to Amarillo, Tex., was 37 cents, and this rate was not disputed before the Commission and is not controverted in this case, but the rate from Amarillo to Bovina found by the Commission to be 25 cents, which, added to the rate from Fletcher to Amarillo of 37 cents, aggregating a total through rate of 62 cents, for the reasons therein stated, was the one that did in law apply on the shipment and should have been the one charged by the delivering carrier, the Pecos & Northern Texas Railway Company, at Bovina. So far as the record discloses, however, this rate was never quoted by the delivering carrier, etc., but that finally a rate of 68 cents was charged and collected.

It further appears from the reports of the Commission that the appellant contended for a 31-cent rate between Amarillo and Bovina, under their item No. 5 on freight class D shipped over 80 miles. In discussing this item, the Commission said: "The act to regulate commerce contemplates not only just and reasonable rates, but plain and intelligible rates; complication, intricacy, and involution invite, if they do not intend, injustice, inequity, and discrimination. A rate or a tariff published and filed with the Commission cannot be held to be legal simply because of that fact. It must also be plain and intelligible. The Commission has emphasized this time and again in as many varying ways as the constantly recurring tariff inconsistencies have necessitated." It seems to be the rule that if no specific rate from point of origin to destination of a through shipment is provided, and no specific manner of constructing the combination rate for it is prescribed, the lowest combination of rates applicable via the route over which the shipment moves is the lawful rate for that shipment.

[11] The further rule of law applicable to this case seems to be that, where a commodity rate is named in a tariff upon a commodity and between specified points, such commodity rate is the lawful rate and the only rate that can be used with relation to that traffic between those points, even though a class rate or some combination may make a lower rate. The naming of a commodity rate on any article or character of traffic takes such article or traffic entirely out of the classification and out of the class rates between the points to which such commodity rate applies.

[12] We admit that, while there is considerable conflict of authority upon the proposition that where a connecting carrier, through a mistake as to the rate, refuses to deliver the goods until a higher rate than the carrier is entitled to charge has been paid, such refusal does not constitute a conversion if the rate demanded was honestly made. The authorities upon this proposition are numerous; but, so far as we have been able to find, all of them were cases where the question of interstate rates, as determined by the Interstate Commerce Commission, was not involved. Our conclusion from this record is that it being the duty of the appellant to file clear and intelligible tariffs with the Interstate Commerce Commission, specifying its rates, it was its primary duty to know what was the proper rate to be charged in this case. By reason of its failure to file clear and definite rate sheets and post the same, as required by the Interstate Commerce Act (Act Feb. 4, 1887, c. 104, 24 Stat. 379 [U. S. Comp. St. Supp. 1911, p. 1284]), and by reason of the consequent inability of its agent at Bovina to inform appellees as to the amount properly due, no fault can be charged to appellees because they did not tender the correct amount on January 14, 1907. It is shown by the record

that on November 9th as soon as appellees ascertained that 62 cents was the correct rate, such amount was tendered, and we must presume that it would have been tendered sooner if the information had been obtained.

Appellant contends that if there has been a conversion, it was on November 9th when appellee tendered the freight at the rate of 62 cents; but, for the reasons above stated, we think the conversion was on January 14th. If we are correct in this conclusion, there was no error in admitting testimony tending to show the value of the goods on that date.

[13] There is no assignment complaining of the error in the court's charge fixing the date of the conversion as November 9, 1907, and we think, if there was such an assignment, the failure of appellant to request a special charge correctly fixing the date would render the error, if any, harmless. This assignment is overruled.

The seventh assignment of error is without merit. The witness Cameron sufficiently qualified himself to testify as to the market value of the corn, or at least there is sufficient in the record upon which we must base a presumption that the court did not err in holding the witness qualified to testify on this issue.

[14] The eighth assignment complains of the action of the court in permitting the witness Cameron to testify by deposition that appellant claimed 68⅓ cents to be the true rate per hundred pounds on the shipment in question from Fletcher, Okl., to Bovina, Tex., between the time of the arrival of the goods at Bovina and the date of the sale. This question was asked and testimony admitted, not for the purpose of proving what the correct weight was on the shipment, but for the purpose of showing what rate had been demanded by the appellant and was admissible on the issue of conversion.

[15] By the ninth assignment of error appellant urges in this court his objection to the following interrogatory of the witness Cameron: Q. "State, if you know, the market value of the canned fruit, such as you had at Bovina at the time it arrived there, and, if not, state its actual value at the time and place." Answer: "Do not know the market value of canned fruit, such as we had, but the actual value 40 cents per quart." The objection to this testimony was that "it was not supported by all the pleadings, and the witness does not show himself qualified to testify as to such value." These objections were properly overruled.

The tenth assignment is based upon the action of the court in permitting this witness to testify by deposition as follows: "Did you have any trees, berry bushes, etc., in this car? If so, state what kind, how many, and their market value, if you know it; otherwise, their real value there and then." Answer: "Yes, I had about 100 apple trees,

about 100 grapes, 25 blackberries. Do not know the market value, but actual value was $25." The same objections were urged to the admission of this testimony as appellant urged to the question and answer set out under the ninth assignment. By the propositions under these two assignments, it is contended that the testimony was inadmissible because the witness does not first state that there was no market value. If this objection had been made in the trial court, we could entertain it here, and it would have been the duty of the trial judge to have sustained the objection. No such objection having been made there, it cannot now be urged in this court.

[16] It is contended under the eleventh assignment that the court erred in permitting the witness Cameron to fix the various items of household and kitchen furniture by referring to the list of items hereinbefore referred to, with the prices of each item set out on the list. Without the testimony of the witness to the effect that the values are as shown on the list, it might be contended that the lists were ex parte statements; but, as evidence was sufficient to identify and verify them and supplemented by his evidence, the lists were properly considered by the jury. What has hereinbefore been said in disposing of the objections to the evidence of the witness Cameron applies to the objections urged to the evidence of the witness Mrs. B. M. Porter and Mrs. Lehman. Most of the objections urged to the testimony of these last-named witnesses affect the weight of their evidence and not its admissibility.

[17] The thirteenth assignment is that the trial court erred in admitting in evidence the certified copy of the findings, opinion, argument, and judgment of the Interstate Commerce Commission, wherein it discusses the rates on the car in question and concludes that 62 cents was the rate then in force and legally chargeable for the transportation of the car in question.

The nineteenth assignment complains of the refusal of the court upon motion made by defendant to strike this testimony from the evidence. In addition to what has already been said with reference to the findings and report of the Interstate Commerce Commission, it is sufficient to say, in disposing of these two assignments, that section 14 of the Interstate Commerce Act is admissible in evidence, without further authentication, and as we understand the provisions of the act, such report is prima facie evidence of the facts found.

By reason of the provision of the law, making the decision and findings of the Interstate Commerce Commission only prima facie evidence of the facts found, the court did not err in admitting item No. 20, contained in the Interstate Commerce Commission No. 3654, of the Santa Fé System tariff No. 5645-C. We therefore overrule the

fourteenth and twentieth assignments of error, based thereon.

It is contended under the fifteenth assignment that the court erred in admitting the testimony of B. M. Porter, as to the particular articles referred to in the list attached to the plaintiff's petition and owned by him, and in permitting him to testify in general terms as to its value. It appears that the witness excluded from his estimate such of his property as had been shown to have a market value at Bovina. He was then asked this question, "I want to ask you to state to the jury in general terms the proximate value of all this property at the time without taking up each particular item," and the court having indicated that he thought the question was objectionable, it was amended as follows: "State in general terms what was the value of this list of property belonging to you, excluding from your estimate such property as you stated you thought you had a market value thereon at Bovina. Now, on the list here is some pictures which are itemized and including the package of mixed spices, cinnamon bark and ground ginger, a sack of meal, salt, cooked sausage, and some horse collars, there seems to be a lot of medical works and surgical instruments— quite a lot of books. If I have made no mistake in the count, there are eleven pages, containing a list of goods which you say this car contained, everything from a horse collar to furniture. I will ask you to give the jury an idea approximately of the real value of the property, excluding from your estimate such property as you have already stated had a market value at Bovina." Answer: "The rest would have an actual value of $1,500 or more." This was objected to because it was incompetent, irrelevant, and immaterial, and because the witness did not qualify himself, and on the testimony being admitted over these objections, appellant reserved a bill of exceptions. The record does not show that the witness was disqualified, and the objection that evidence of the value of the articles was incompetent, irrelevant, and immaterial is not tenable, and what is here said also disposes of the sixteenth, seventeenth, and eighteenth asssignments.

[18] The twenty-first assignment is based upon various exceptions and objections contained in appellant's bill of exceptions to the rulings, remarks, and conduct of the court during the trial. While the plaintiff himself was upon the stand, he had testified as to the value of certain property shown on a list attached to the pleadings and which was alleged to have been the property of G. H. Porter, the original plaintiff, and who it seems had died since the institution of the suit. The plaintiff had testified on direct examination that the goods set out in the list were worth $350. The bill of exceptions shows that when counsel for appellant began to interrogate the witness with reference to the particular items in the list the court remarked: "He has answered that he didn't remember anything else; no use to go over all that." This remark of the court produced a colloquy between the court and counsel for plaintiff on one side, and between the court and counsel for defendant upon the other, a part of which is as follows: "Appellant's Counsel: Q. In stating to the jury that the goods shown on this list were worth $300 or more, did you take into consideration the value of one suit of clothes? A. I did. Q. What kind of suit was that? Court: He told you that he didn't remember a thing in the world about that. Appellant's Counsel: One witness has testified as to this list. The Court: What is the sense of that when he said he didn't know anything in the world about that? Appellant's Counsel: He said they were all worth that much. Court: He told you how that was done. Appellant's Counsel: I want to show by the witness that he did not know. Court: I am not going to be here always. Appellant's Counsel: We except to the rulings and remarks of the court. The Court: Witness has said that he didn't know what was in there, and it seems to be a useless consumption of time— Appellant's Counsel: We except to the ruling and remarks of the court. Appellant's Counsel (addressing the witness). Doctor, in response to Mr. Knight's question this morning, when you stated that these goods— The Court: He stated three or four times in answer to your interrogatories, and Mr. Knight said he had included every item in the list. He has answered that question. Appellant's Counsel: All we want to ask is the question for the benefit of a bill. The Court: I will give you the bill. Appellant's Counsel: We expect the witness to answer that he did consider each and every one of these items in answering Mr. Knight's question and fixing the value. The Court: Do you mean to ask that question with reference to each and every item? He has answered at least three times that he has made his estimate. That when he made his estimate he considered the items this morning. Appellant's Counsel: We except to the remarks of the court. The Court: No use to have him repeat that over and over again."

[19] It appears from the record that on direct examination the witness had been shown a list of goods belonging to his deceased brother and which had been included in the shipment and had testified generally that the goods in the list were of the value of $350, and appellant's counsel sought by cross-examination to have the witness testify particularly as to the value of each article named in the list as a test of the accuracy and truthfulness of the witness' statements and for the purpose of showing his credibility. We think he was entitled to that right. The purpose of a cross-examination is to sift and to modify and have the witness ex-

plain what has been said on his direct examination, and if the witness by this process can be discredited and the weight of his testimony weakened, the right should not be denied. "The benefit of cross-examination is an essential condition to the reception of direct testimony. That is to say, testimony is not admissible if the party against whom it is to be used or those in privity with him have no opportunity of cross-examining the witness. The right being a substantial and a very important one, it is error to restrict it so far as to prevent the cross-examining party from going fully into all matters connected with the examination in chief." Thompson on Trials (2d Ed.) § 406. The author, quoted further, says, "A witness may be cross-examined as to his examination in chief in all its bearings and as to whatever goes to explain or modify what he has stated in his examination in chief, and prejudice will be presumed where this right in denied." Martin v. Elden, 32 Ohio St. 282. "Where a witness has on his examination in chief given his opinion as to value, he may be cross-examined in full respecting his reasons for such opinion, and here the rule applies that great latitude should be allowed in cross-examination." Mo., etc., Ry. Co. v. Haines, 10 Kan. 439; C., B., etc., Ry. Co. v. Andrews, 30 Kan. 590, 2 Pac. 677; Markel v. Moudy, 13 Neb. 323, 14 N. W. 409; Buck v. City of Austin, 165 Mass. 509, 43 N. E. 496. This question has also been considered and the rules above announced followed by our state courts in the following cases: P. & G. Ry. v. Kirby, 42 Tex. Civ. App. 340, 94 S. W. 173; Kirby v. P. & G. Ry., 39 Tex. Civ. App. 252, 88 S. W. 281; M., K. & T. Ry. v. Rich, 51 Tex. Civ. App. 312, 112 S. W. 114; Dittman v. Weiss, 31 S. W. 67; Ft. Worth & Denver City Railway Co. v. Travis, 45 Tex. Civ. App. 117, 99 S. W. 1141.

The fact that a cross-examination in full would have necessarily required a great deal of time did not deprive appellant's right of any of its merit, and the record discloses a degree of impatience on the part of the trial court with appellant's counsel, which we think was prejudicial.

[20] The twenty-second assignment complains of the court's action in excluding the testimony of D. L. Meyers, by which appellant sought to prove the rate on the various roads, from initial point to destination, and in the fifteenth interrogatory he was requested to state such charges from the established, promulgated, and published tariff rate in force during the month of January, 1907. As has been said, the question of determining the correct rate due on this shipment had been by both parties submitted to the Interstate Commerce Commission, the one tribunal authorized by law primarily to settle that question, and the Commission having fixed the rate at 62 cents, in our opinion, the matter was res adjudicata and conclusive in this action. As we construe the Interstate Commerce Act, appellants had the right to contest the validity of the rate fixed by the Commission by prosecuting the matter in the federal courts. Having failed to do this, they are precluded from questioning the correctness and reasonableness of the rate fixed by the Commission. We have not found any case, either by the state or federal courts, which passes upon the conclusiveness of the findings by the Commission in a proceeding of this kind, and have been forced to reach the conclusion by an investigation of the Interstate Commerce Act itself. We have found no provision in the act other than that contained in section 16 thereof, which makes the findings and order of the Commission prima facie evidence of the fact therein stated where a petition has been filed in the federal courts against the carrier to enforce compliance with the orders and awards of the Commission.

With the exception of assignment No. 27, which criticises the charge of the court for fixing the time of conversion on November 9, 1907, the criticisms of the court's charge are hypercritical and without merit. We have reviewed the remaining assignments in appellant's brief, and such of them as have not been disposed of by what we have heretofore said are overruled for want of merit.

Because of the error of the court in abridging appellant's right of cross-examination upon the material issue, viz., the value of the goods in question, the judgment is reversed, and the cause remanded.