GENERAL BONDING & CASUALTY INS. CO. v. HARLESS.   (No. 214–3327.)

(Commission of Appeals of Texas, Section B. March 2, 1921.)

1. Sequestration ⬷⫸20—Quashal of writ relieved surety on replevin bond of liability.

Quashal of writ of sequestration sued out by plaintiff rendered null and void the replevy bond executed by the original defendant, and relieved of all liability the surety thereon.

2. Sequestration ⬷⫸15—Surety on replevy bond on sequestration held not guilty of conversion.

Where plaintiff, in an action to foreclose a chattel mortgage on diamonds, sued out a writ of sequestration under which sheriff took the diamonds into possession, a bonding company, by executing a replevy bond and taking possession of the diamonds and delivering them to defendant's attorneys, did not become liable to plaintiff for conversion of the property, the sequestration proceedings being subsequently quashed, in view of Rev. St. § 7103.

Error to Court of Civil Appeals of Fifth Supreme Judicial District.

Suit by Ben. F. Harless against Maude White, alias Maude Nelson, wherein writ of sequestration was sued out, defendant replevying the property, and giving replevy bond with the General Bonding & Casualty Insurance Company as surety, plaintiff making such company a party defendant. From judgment of the Court of Civil Appeals (210 S. W. 307), affirming judgment for plaintiff, the insurance company brings error. Reversed and rendered as to the insurance company.

⬷⫸For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

W. D. Cardwell, of Barkburnett, for plaintiff in error.

Etheridge, McCormick & Bromberg, of Dallas, for defendant in error.

McCLENDON, P. J. On March 24, 1913, Maude White purchased of Ben F. Harless a diamond ring, diamond necklace, and other jewelry, and as a part of the purchase money executed to Harless 40 promissory notes, amounting to $2,017, to secure which she gave a chattel mortgage upon the jewelry. The mortgage provided, among other things, that upon default in the payment of the notes Harless should have the right, with or without legal process, to take possession of the articles sold, all damage for their seizure being waived.

On April 18, 1913, Harless brought this suit against Maude White for recovery upon the notes and to foreclose the chattel mortgage upon the jewelry. At the same time he sued out a writ of sequestration, under which the sheriff took into his possession from defendant the ring and necklace. Defendant replevied the sequestered articles, giving a bond of $2,000 with General Bonding & Casualty Insurance Company as surety, and thereupon the articles were delivered by the sheriff to the Bonding Company, who in turn delivered them to defendant's attorneys, taking their receipt.

On December 22, 1914, Harless filed an amended petition in which, in addition to the relief originally prayed for, he alleged that the Bonding Company either had possession of the sequestered property, or had converted it, and asked judgment against the Bonding Company for its value.

Later, upon motion by the Bonding Company, and upon admission in open court by plaintiff that the motion should be sustained, an order was entered quashing and holding for naught the affidavit, bond, and writ of sequestration.

The case was tried before a jury, and judgment rendered upon a directed verdict in favor of plaintiff against defendant, White, for a balance on the notes of $1,736, and against the Bonding Company for $1,651, the value of the replevied articles ($1,300), with interest. Upon appeal by the Bonding Company alone, this judgment was affirmed by the Court of Civil Appeals. 210 S. W. 307.

The sole question for determination is whether there is any warrant, under the evidence, for a judgment against the Bonding Company.

[1] It is conceded by plaintiff that when the sequestration proceedings were quashed all right of action upon the replevy bond determined. Mitchell v. Bloom, 91 Tex. 634, 45 S. W. 558. But plaintiff contends that the Bonding Company, by executing the bond, or, in any event, by taking possession of the property and delivering it to defendant's at-

torneys, became liable to plaintiff for conversion of the property.

[2] We do not think this contention is sound. It appears to be grounded upon the holding in Cabell v. Hamilton, 81 Tex. 104, 16 S. W. 811. That suit was an action for damages growing out of the wrongful levy of an attachment upon personal property belonging to the plaintiff. The question there was whether the sureties upon a bond given by the plaintiff in attachment to the United States marshal to indemnify him in levying the writ were liable to the owners of the property for the wrongful levy. It was held that they were, the court saying:

"We understand that all persons who contribute to the commission of a tort through which injury results to another are responsible as principals, and that such persons as induce a wrongful levy to be made by giving to the officer making it an indemnity bond may be treated as trespassers."

The principle there announced is well recognized; but it has no application here.

There, the indemnitors of the officer and their sureties were active participants in causing a levy which proved to be unlawful. No contractual relation existed between the owners of the property and the sureties upon the indemnity bond. Under no theory could they be held upon their undertaking in an action by the owners of the property. Their liability to the owners could only arise as a result of their participation in a wrongful act on the part of the marshal resulting in damage to plaintiffs.

Here the situation of the parties is essentially different. Whatever may have been the rights of the plaintiff to obtain possession of the jewelry under his mortgage, possession was in fact in defendant when the suit was filed. The method adopted by plaintiff of depriving defendant of her possession was one given by statute, and when resorted to was subject to all statutory provisions governing its exercise. One of those provisions (R. S. § 7103) authorized the defendant "to retain possession of the" property "by delivering to the officer executing the writ his bond, payable to plaintiff," conditioned as provided in section 7103, R. S.

Quoting from Chief Justice Phillips in Surety Co. v. Stebbins, 107 Tex. 419, 180 S. W. 103, L. R. A. 1916F, 583:

"The purpose of the replevy bond is to provide a remedy for the defendant, whereby he may procure the release of his property by placing the bond in the court in its stead. In giving the bond he does nothing in any wise related to the issue in the suit. * * * He invokes no action of the court. He makes no move in relation [to] the cause of action. He does nothing which can in any way affect the cause of action. He merely places in the court that which the law says to him he may place there in lieu of his property. * * * The right given by the statute to have his

property restored by giving the bond is for the benefit of the defendant; and its exercise, wholly unrelated as it is to the cause of action or its determination, should in reason entail no result to his disadvantage which the law does not expressly declare.

"The liability of the defendant on the bond is not to be confused with the liability sought to be adjudged against him on the cause of action. The right to subject the property to the payment of the debt under the attachment seizure being no part of the cause of action, the undertaking of the bond, the substitute for the property, becomes no part of it. The giving of the bond is an acknowledgment of liability under the bond, but it is a liability distinct from that of the cause of action. It is acknowledged only upon the condition of the liability under the latter being established, and is enforceable only in that event.

"* * * The liability which is adjudged against them [the sureties] where the defendant is condemned in the suit is upon the bond, and not upon the plaintiff's cause of action. They acknowledge such liability conditioned upon the defendant being so condemned when they execute the bond."

Had the sheriff still retained the property when the sequestration proceedings were quashed, there can be no question but that his clear duty would have been to restore it to defendant from whom he had received it. The same duty would have rested upon the Bonding Company had it retained possession. An action for conversion cannot be predicated upon an act which under the law it is one's duty to perform.

Moreover, the statute itself gave to the defendant "the right to retain possession of the" property upon furnishing the prescribed bond. That bond was required to be made payable to plaintiff. It stood in the place of the property, the possession of which was required to be left where the officer executing the writ had found it. In the absence of some participation in the loss of the security, other than the execution of the replevy bond and restoration of possession to defendant, the liability of the surety to the plaintiff is measured by the bond alone.

We think this conclusion is a necessary deduction from the following language from the opinion in Mitchell v. Bloom, above:

"Since without a lawful writ there is no authority for the seizure of defendant's property, and hence none for its replevy, it follows, as we think, that when in the suit in which the writ of sequestration is sued out it is vacated by a judgment of the court, all proceedings under the writ, in so far at least as they inure to the benefit of the plaintiff, are likewise of no effect."

The order quashing the sequestration proceedings was a judicial determination, binding upon plaintiff, that these proceedings were void, and the seizure of the property under them an unlawful act. The execution of the replevy bond, and restitution of the property to defendant, merely prevented the injurious consequences which might flow from that unlawful act. To hold that such restitution constituted a tort would be permitting the illegal sequestration proceedings to "inure to the benefit of plaintiff," who instituted them.

We conclude that the judgments of the district court and Court of Civil Appeals, in so far as they affect the Bonding Company, should be reversed, and judgment rendered in favor of the Bonding Company. In other respects the judgments of those courts should not be disturbed.

PHILLIPS, C. J. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.