**COMMERCIAL ACCEPTANCE TRUST v. PARMER et al. (No. 9729.)***

(Court of Civil Appeals of Texas. Fort Worth. Feb. 4, 1922. Rehearing Denied April 15, 1922.)

1. **Appeal and error** ⬅️690(6)—**Bill of exceptions held not to show witness was not qualified to state use value of truck.**

A bill of exceptions in support of an assignment of error in permitting defendant to testify as an expert as to the reasonable rental value of a truck was insufficient where it did not show that an examination was made as to qualification of the witness, and did not negative the existence of testimony other than that contained in the bill of exceptions.

2. **Evidence** ⬅️543(4)—**Defendant owner held competent to state use value of truck.**

Defendant, owner of the truck seized under a writ of sequestration, who testified that he had been in the trucking business for four years hauling freight between towns, and that there were no trucks being rented for such purposes during that time, but stating the amount of his receipts and expenses, was competent to testify as to the use value of the truck over objection that he was not qualified as an expert.

3. **Appeal and error** ⬅️742(4)—**Proposition held not germane to assignment of error in admitting testimony of use value.**

A proposition that it was error to permit a witness to state the use value of a truck per day for the period of a year, and the use which he was making of it at the time of the seizure, is not germane to an assignment that it was error to admit testimony to the reasonable rental value of the truck.

4. **Trial** ⬅️412—**Objection to testimony is waived by cross-examining witness on same point.**

Plaintiff waived his objection to the testimony of defendant as to the rental value of the motortruck in controversy for the period of a year during which it was sequestered by eliciting from defendant on cross-examination a statement as to the rental value of the truck up to the date of the trial.

5. **Appeal and error** ⬅️1052(5)—**Verdict held not to have been based on testimony of value objected to.**

A verdict allowing as damages for the detention of a truck under writ of sequestration a sum equivalent to $8 per day shows that the jury did not base their verdict on defendant's testimony, to which objection was made, that the rental value of the truck was $30 a day.

6. **Sales** ⬅️365—**Findings held to show seller was owner of purchase-money note when new contract was made.**

In an action on notes given for the purchase price of a motortruck brought against the maker and a subsequent buyer of the truck, who had assumed payment of the notes, where the maker alleged an agreement with the seller, who transferred the notes to plaintiff, accepting the notes of the subsequent buyer in place of those issued, a finding by the jury that the note was indorsed by the seller to the plaintiff prior to the agreement, but was in possession of the seller when the agreement was made, and subsequently was delivered to the plaintiff, sufficiently answered the question as to the ownership of the note, since it showed that delivery to plaintiff was subsequent to the contract, and delivery was necessary to complete the sale of the note to plaintiff under Acts Reg. Sess. 1919, c. 123, § 30 (Vernon's Ann. Civ. St. Supp. 1922, art. 6001—30).

7. **Sequestration** ⬅️5—**Depreciation of truck by ordinary use does not injure it within statute.**

The depreciation of a motortruck by ordinary use does not injure it in the sense that word is used in Rev. St. art. 7094; so that testimony that the use for a year would depreciate its value one-half does not sustain an affidavit for sequestration alleging fear the defendant would injure the truck.

8. **Malicious prosecution** ⬅️64(2) — **Evidence held to sustain finding of malice in suing out writ.**

Evidence that plaintiff's agent who made the affidavit for a writ of sequestration had a claim against one of the defendants, and stated

to that defendant that, unless the claim was paid, he would take the motortruck away from him, *held* sufficient to sustain an award of exemplary damages for maliciously suing out the writ.

**9. Malicious prosecution** ⊚⇛69—**$245 exemplary damages for malicious sequestration of truck held not excessive.**

A verdict awarding $245 as exemplary damages for maliciously suing out a writ of sequestration of a motortruck at a time when there was an abnormal demand for the services of such truck, and defendant had all the trucking he could do, was not excessive.

**10. Sequestration** ⊚⇛21—**$2,500 actual damages for detention of truck for year held not excessive.**

Where there was evidence that the rental value of defendant's motortruck was $30 a day, due to the abnormal demand for trucking in that locality, a verdict allowing $2,500 actual damages for detention of the truck for one year under sequestration wrongfully sued out was not excessive.

**11. Evidence** ⊚⇛20(1)—**Courts can judicially notice abnormal demand for trucking in oil fields.**

The abnormal conditions existing in the oil fields, and the demand for motortrucks to do the requisite hauling, are matters concerning which the trial court could take judicial cognizance.

**12. Sequestration** ⊚⇛20—**Quashing writ does not prevent judgment against sureties on sequestration bond.**

The fact that the writ of sequestration was quashed by agreement of the parties does not prevent judgment for damages for the detention of the property under the writ being entered against the sureties on the sequestration bond.

Appeal from District Court, Eastland County; Geo. L. Davenport, Judge.

Suit by the Commercial Acceptance Trust against Earl Parmer and T. W. Stephens, in which defendant Stephens pleaded a cross-action for damages by reason of the sequestration writ issued at the instance of the plaintiff. Judgment for both defendants upon plaintiff's cause of action, and for the defendant Stephens upon his cross-action, and plaintiff appeals. Affirmed.

Wagstaff & Wagstaff, of Abilene, and Butts & Wright, of Cisco, for appellant.

Patterson & Sherry, of Cisco, for appellees.

BUCK, J. This suit was filed by the Commercial Acceptance Trust against Earl Parmer and T. W. Stephens, alleging that Earl Parmer had bought a Dodge motortruck from the Fulwiler Electric Company, and in part payment thereof had executed his note, providing for monthly payments, and his chattel mortgage on the truck; that the Fulwiler Electric Company, before the maturity of said note, transferred it and the chattel mortgage, securing the same, to the plaintiff; that subsequently the defendant Earl Parmer, without the consent of plaintiff, sold the said truck to T. W. Stephens, and, in consideration for the sale of the truck to him, said Stephens assumed payment of the aforesaid note, and became liable and bound to pay plaintiff for the amount therein specified. It was further alleged that the defendants, and each of them, had failed to pay the installment due October 4, 1919, and that plaintiff declared said note due.

The defendants answered by way of a general demurrer and a general denial, except as the facts alleged in plaintiff's petition were admitted, and further pleaded that on September 15, 1919, the defendant Earl Parmer with the consent of the Fulwiler Electric Company and the plaintiff, acting through said Fulwiler Company, its agent and representative, sold said truck to Stephens, and that the defendants and the plaintiff corporation and the Fulwiler Company all agreed that Stephens should execute and deliver a contract and note of same date and of like tenor and effect as those executed by defendant Parmer at the time he bought the truck, and that plaintiff would cancel the note and contract executed by Parmer and deliver it to him. Stephens further pleaded that, upon the maturity of the first payment on the note, he tendered and offered to pay to plaintiff the amount of said payment, to wit, $184.40, but that plaintiff refused to accept the same, and that Stephens then sent the amount of said installment to the Chicago office of plaintiff, which was retained by plaintiff in full satisfaction of the installment due. Defendant further pleaded that plaintiff had thereby ratified the agreement made between the two defendants and the Fulwiler Electric Company, and were estopped and precluded from saying that the installment of said note was due and unpaid. Defendant Stephens further pleaded, in way of a cross-action, for damages, by reason of a sequestration writ issued at the instance of plaintiff and the taking of his truck from him. He alleged that he had been damaged thereby in the sum of $2,500 actual damages.

Plaintiff answered in a supplemental petition, specially denying the allegations made by the defendants, and specially pleaded that the defendants approached an employé of the Fulwiler Electric Company and informed him that the defendant Parmer wished to sell and the defendant Stephens wished to buy the truck in controversy; whereupon said employé informed defendants that he did not know whether such a transfer would be satisfactory, nor whether the note of the defendant Stephens would be accepted in lieu of, and as a substitute for, the note of defendant Parmer, but that he requested de-

fendant Stephens to make a statement showing his financial condition, and among other statements made by said defendant Stephens in compliance with the request was that he owed no past debts, which was untrue, and was known to be untrue by Stephens at the time he made the statement, but was not known to be untrue by said employé; that, upon the return of one of the partners of the Fulwiler Electric Company, said statement was submitted to him, and he thereupon declined and refused to assent to the sale of said car to the defendant Stephens, or to recommend to plaintiff the acceptance of the note of said defendant Stephens in lieu of the note of Parmer. It was further alleged that the Fulwiler Electric Company was an indorser of the note of defendant Parmer, and, in case the note of Stephens should be substitued therefor, it would be required to indorse the latter note, and that Stephens at that time was indebted to the Fulwiler Electric Company in the sum of $400 long past due.

The cause was submitted to a jury upon certain issues of fact, in answer to which the jury found:

(1) That the note of Parmer to the Fulwiler Electric Company, on the date of the alleged contract between the Fulwiler Electric Company and the defendants, had been indorsed by the Fulwiler Electric Company to the Commercial Acceptance Trust, but was in possession of the Fulwiler Electric Company, at Abilene, at said time, and subsequent thereto was delivered to plaintiff.

(2) That the owner of the note sued upon consented to the sale of the truck by defendant Parmer to the defendant Stephens.

(3) That the owner of the note sued on agreed to accept the note of defendant Stephens in lieu of the note previously executed by defendant Parmer.

(4) That, in making an affidavit on which the sequestration writ was issued in this suit, H. D. Fulwiler did not fear that defendant Stephens would injury, ill treat, or remove the truck from Eastland county.

(5) That H. D. Fulwiler did not have probable cause for believing at the time the affidavit in sequestration was made by him that defendant Stephens would injure, ill treat or remove the truck from Eastland county.

(6) That, in making the affidavit and in causing the sequestration writ to be issued, plaintiff was actuated by malice.

(7) That the reasonable value for the detention and hire of said truck from the time of the levy of the writ of sequestration to the time of the trial was $2,500.

(8) That Stephens was entitled as exemplary damages to $245.

Upon the verdict the court entered a judgment that the plaintiff take nothing as against Parmer and Stephens, and that the defendants recover from plaintiff their costs; that the defendant Stephens recover from the plaintiff, as principal, and the Fulwiler Electric Company and H. D. Fulwiler, as sureties, on the sequestration bond the sum of $1,250, with interest, said amount being the value of the truck at the time it was taken; that defendant Stephens recover from plaintiff and its sureties the sum of $2,500 as actual damages for the suing out of the writ, and the sum of $245 as exemplary damages. From this judgment the plaintiff has appealed.

In appellant's first assignment an attack is made on the ruling of the court in admitting the testimony of defendant Stephens as to the reasonable rental value of the motortruck involved in this suit. It is claimed the said Stephens did not qualify as to testify as an expert as to the reasonable value of the use of the truck. Appellee answers this assignment in several ways:

[1] First, he alleged that appellant's bill of exception is insufficient to raise the question herein presented, because it does not show that an examination was made as to the witness' qualification to testify as to the reasonable value of the use of the truck, and does not negative the existence of other testimony than that contained in the bill of exception; that in such case the presumption obtains that the court became satisfied with the competency of the witness upon sufficient evidence. The following cases seem to sustain appellees' contention. Lee v. Buie (Tex. Civ. App.) 212 S. W. 230; Magnolia Motor Sales Co. v. Chaffee (Tex. Civ. App.) 192 S. W. 563; Taylor Bros. Jewelry Co. v. Kelley (Tex. Civ. App.) 189 S W. 340; Hanover Fire Ins. Co. v. Huff (Tex. Civ. App.) 175 S. W. 467; Ry. Co. v. Porter (Tex. Civ. App.) 156 S. W. 267; Ry. Co. v. Warner, 42 Tex. Civ. App. 280, 93 S. W. 489; Hardin v. Sparks, 70 Tex. 429, 7 S. W. 769.

It is alleged further that the record discloses that on cross-examination the plaintiff elicited from this witness the statement that the reasonable rental value for the use of the truck in controversy was $30 a day, and that, where the appellant on cross-examination elicited from the witness the same testimony given on direct examination, the appellant cannot complain. Covington v. Sloan (Tex. Civ. App.) 124 S. W. 690; Ry. Co. v. Pettit, 54 Tex. Civ. App. 358, 117 S. W. 894; Fire Association v. Jones (Tex. Civ. App.) 40 S. W. 44.

[2] The witness testified that he knew the reasonable value of the use of the truck, and his further testimony does not show that he did not know such reasonable value. This has been held to be sufficient to show the qualification of a witness. Ry. Co. v. Porter (Tex. Civ. App.) 156 S. W. 267; Ry. Co. v. Hapgood (Tex. Civ. App.) 210 S. W. 969, writ refused; Payne v. Whitehouse Lumber Co. (Tex. Civ. App.) 231 S. W. 417. Stephens testified that he was 22 years old, married, lived with his family at Cisco, had been in trucking business for about four years, hauling freight to and from the other towns for

hire; that there were no trucks being rented for trucking purposes during this time; that he was receiving 65 cents per hundredweight for hauling freight to Ranger, and from $2 to $2.50 for hauling freight to Breckenridge; that it cost him $4 a day for fuel, and that his time was worth $5 a day; that he knew what the reasonable market value of the use of a truck like that in controversy was at Cisco at the time the truck was taken by sequestration, and that it was $30 a day. We think that the first proposition under this assignment should be overruled. Ry. Co. v. Porter (Tex. Civ. App.) 156 S. W. 267.

[3] The second proposition under this assignment is that it was error for the trial court to permit the witness Stephens to testify over the objection of plaintiff as to the value of the use of the truck per day for the period of a year, and the use of which he was making of it at the time of the seizure. This proposition does not appear to be germane to the assignment. The assignment is to the admission of the testimony of the defendant Stephens "to the reasonable rental value of the motortruck involved in this suit." The appellant's bill of exception does not show that the appellee testified as to the value of the use of the truck per day for a period of one year. His testimony, as shown in the bill of exception, is as follows:

"I know the reasonable value of the use of the truck per day while being used for the purpose for which I used it at the time of the levy. It was $30 per day. At that time I was trucking."

[4, 5] Moreover, while appellant does not include the testimony in its bill of exception, it elicited from the witness on cross-examination the statement that the rental value of the truck up to the date of the trial was $30 a day. We do not think that appellant is in any position to complain of the action of the court in the respect noted. Even if the question is properly presented here, and even though it should be held that the appellant did not waive the objection by introducing testimony more directly against the rule here urged, in his cross-examination, and did not move to strike out said testimony, yet the verdict does not show that the jury based the verdict upon such. There are cases in which it has been held by the courts that it was not the proper measure of damage in a case of this kind to base the judgment on testimony as to the reasonable market value by the day or hour of the article taken under the writ. Craddock v. Goodwin, 54 Tex. 578; Railey v. Hopkins, 50 Tex. Civ. App. 600, 110 S. W. 779; Vaughn v. Charpiot (Tex. Civ. App.) 213 S. W. 950. The testimony shows that the writ of sequestration was issued October 10, 1919. The trial was had October 8, 1920, practically a year from the date of the sequestration. At $21 a day, even for the working days, the value

of the use of the truck, less the cost of operation, testified to by Stephens, would be $6,531. The jury found in answer that the reasonable value for hire for such truck from the time of the levy of sequestration to the time of the trial was $2,500, considerably less than half of what the amount would have been had the jury estimated the damages upon the basis of the daily value testified to by Stephens.

[6] The court submitted the issue:

"Who owned the note in controversy in this case on the date of the alleged contract between the Fulwiler Electric Company and the defendants herein?"

The answer was:

"Said note was indorsed by Fulwiler Electric Company to Commercial Trust Company prior to above. Was in possession of Fulwiler Electric Company at Abilene, Tex., at time of above and subsequent to above was delivered to Commercial Trust Company."

The jury was required to find only the facts, and, having done so, it probably became a question of law for the court to determine who was the owner of the note in question. We think the question was sufficiently answered by the jury to show that at the time of the alleged contract between the Fulwiler Electric Company and the defendants the former was the owner of the note, and subsequently delivered the note to the appellant. A delivery was necessary to complete the sale. Section 30, art. 3, tit. 1, c. 123, Reg. Session of Legislature, Acts 1919 (Vernon's Ann. Civ. St. Supp. 1922, art. 6001 —30).

[7] An attack is made under the third assignment upon the answers of the jury to issues 4 and 5 submitted, as to whether H. D. Fulwiler, at the time he made the affidavit, as agent for the appellant in the sequestration proceedings, feared that the defendant Stephens would injure or ill treat the truck. Appellant urges that, since Stephens himself testified that the use of the truck for a year would depreciate its value one-half, the answers of the jury to these two issues are not sustained by the evidence. We do not understand that the mere use of an article in an ordinary manner would "injure" it, as that word is used in article 7094, Rev. Statutes. Halff v. Waugh (Tex. Civ. App.) 183 S. W. 839, writ refused; Taylor Bros. Jewelry Co. v. Kelley (Tex. Civ. App.) 189 S. W. 340.

[8, 9] Under the fourth and fifth assignments complaint is made: First, that there is no evidence showing or tending to show that plaintiff was guilty of any malice in suing out the writ through its agent; and, second, that the judgment for $245 exemplary damages is excessive. It will be remembered that the appellant in this case is a corporation, and must act through its agents. Ste-

phens testified that, subsequent to the conversation he and Parmer had with Mr. Womack, the local agent of the Fulwiler Electric Company at Cisco, in which the proposition was made for the substitution of the note of Stephens for that of Parmer, he had a conversation with one of the Fulwilers, and asked him "why he didn't transfer the papers on the Dodge?" that Fulwiler replied that he could not transfer the papers while Stephens was owing him money; that Stephens owed him $400, and it did not look like he had tried to pay him; that Fulwiler finally proposed that he would make the substitution if Stephens would give him a second lien on the truck to secure Fulwiler for the claimed indebtedness due him; that Stephens refused to give the second lien; that Fulwiler told him that if he would not give the second lien on the truck he was going to take the truck away from him, but that, if he did give the second lien, he would not take the truck; that Stephens offered him the money due on the payment, but that Fulwiler refused to receive it.

It was further alleged that at the time the truck was taken there was a great deal of hauling between the towns of Eastland and Stephens counties, and that Stephens was kept busy all the time. We think the testimony is sufficient to sustain that part of the verdict and judgment assessing exemplary damages, and that the amount assessed is not excessive. In the recent work of Fletcher, Cyclopedia Corporations, vol. 5, p. 5223, it is said:

"It would seem not to be open to question that, in a proper case, an action for false arrest and imprisonment or for malicious prosecution will lie against a corporation, and it has been held that a railroad company, or any other corporation, is liable for a false arrest and imprisonment or a malicious prosecution made, caused or instituted by an officer, agent or servant in the course of his employment, although he may have had no authority to cause arrests or imprisonment or to institute criminal prosecutions without probable cause. If he has general authority to make or cause arrests or institute prosecutions for offenses against the corporation, and under color of such authority makes or causes a false arrest or prosecution without probable cause, his act is in the course of his employment, and this is sufficient to render his principal liable; and the malice of the officer, agent or servant in such a case is imputable to the corporation. And it has also been held that the same is true where an officer, agent or servant of a corporation maliciously or wrongfully, but in the course of his employment, institutes or prosecutes a civil action, attachment or other proceeding, in the name of and for the corporation."

[10] What we have heretofore said, as to the admissibility of the testimony of Stephens that the market value of the use of the truck was $30 a day, is pertinent to the questions raised in the sixth and seventh assignments of error, which attack the judgment for $2,500 actual damages. The evidence shows, as before stated, that Stephens was deprived of the use of the truck for practically a year. The amount awarded would have been a little over $8 a day for that time. Under the facts in the record, we are not prepared to say that the judgment in this respect is not supported by the evidence, or is excessive. In Craddock v. Goodwin, 54 Tex. 578, it is said:

"And there are cases in our Supreme Court where it has been held that, for the wrongful taking of horses and mules, the measure of damages was their value, and the value of their use or hire. This rule is recognized in Hudson v. Wilkinson, 45 Tex. 445, where it is applied to the wrongful taking and detention of a wagon and team. In that case Mr. Justice Moore condemns the mode of compensation adopted, of valuing the hire by the day or the month, when the period was protracted or the litigation prolonged. It is a rule which in many cases would do simple justice, but in others might be pushed to the verge of absurdity. It is not perhaps possible to lay down a rigid and unbending rule, applicable to all cases. It must of necessity, as we have said, vary with the character of the property, and somewhat with the peculiar circumstances of the case. The thing to be kept in view is that the party shall be compensated for the injury done. Where money or goods, having a price in market, are the subject of the wrong, the value and the value of the use of which the party has been deprived, in the shape of interest, would be adequate compensation. It is but the application of the same rule which permits the recovery of the hire, as for the use of horses or work animals. Very clearly the seizure of the plaintiffs' plow animal or work horse in this case would be very poorly compensated for by the payment of interest for the time which they had been deprived of them, and then only, but it is equally clear that their value and hire, measured by the month or the year, for the long period since their seizure to the time of trial, would be absurdly excessive. We think no more equitable rule can be adopted in determining the plaintiffs' actual damages than to allow in any event, if plaintiffs made out a case for actual damages, an amount not less than the value of the property, with interest to the time of trial; but the jury should also take into consideration the value of the use or hire of the animals seized for the whole time of which the plaintiffs have been deprived of them, and allow such an amount for actual damages as will compensate the plaintiffs, whether computing it by the rule of interest or that of hire or value of the use, as may seem to them most adequate to that result."

[11] In Halff v. Waugh (Tex. Civ. App.) 183 S. W. 839, the court sustained a judgment for $1,500 actual damages and $2,000 exemplary damages for the detention of a truck for a little over 10 months. The transactions therein discussed occurred in 1914, under normal conditions. The abnormal conditions existing in the oil fields and the demand for trucks to do the requisite haul-

ing may be said to be a matter concerning which we may make judicial cognizance, and the trial court could have done so. Moreover, the testimony shows that there was a great deal of hauling done in Eastland and Stephens counties, and that Stephens had all that he could do. We conclude that the judgment in the respect mentioned cannot be disturbed.

[12] The tenth assignment complains of the judgment of the court against the sureties on the sequestration bond. It is shown in the record that it was agreed in open court that the motion for defendant to quash the writ should be sustained, which was done. It is urged that, the writ of sequestration having been quashed, there can be no liability on the part of the sureties on the sequestration bond. In Mitchell & Co. v. Bloom, 91 Tex. 634, 45 S. W. 558, on a certified question, the Supreme Court decided that, in a sequestration suit, where the property had been seized and replevied, and the writ then properly quashed for defects in the affidavit and bond, recovering the property of the defendants, plaintiff could not have judgment against the sureties on the replevy bond. This decision seems to have been followed by the court since that time (Insurance Co. v. Harless, 228 S. W. 124) by the Commission of Appeals (Surety Co. v. Stebbins, etc., Co., 107 Tex. 413, 180 S. W. 101) although it overruled several decisions of the Courts of Civil Appeals, such as Bemis v. Wells, 10 Tex. Civ. App. 626, 31 S. W. 827; Cahn v. Jaffray, 12 Tex. Civ. App. 324, 34 S. W. 372; Filgo v. Bank (Tex. Civ. App.) 38 S. W. 237; Artesian Well Co. v. Craig (Tex. Civ. App.) 43 S. W. 934. In 35 Cyc. p. 1411, subd. 4, it is said:

"On the theory that without a lawful writ there is no authority for the seizure of defendant's property, and after the quashing of a writ of sequestration for irregularities, no proceedings can be maintained against the sureties on the release bond"—citing Avery v. Popper, 92 Tex. 337, 48 S. W. 572, 49 S. W. 219, 50 S. W. 122, 71 Am. St. Rep. 849.

In Surety Co. v. Stebbins, supra, Chief Justice Phillips says:

"The purpose of the replevy bond is to provide a remedy for the defendant, whereby he may procure the release of his property by placing the bond in the court in its stead. In giving the bond he does nothing in any wise related to the issue in the suit. * * * He invokes no action of the court. He makes no move in relation to the cause of action. He does nothing which can in any way affect the cause of action. He merely places in the court that which the law says to him he may place there in lieu of his property. * * * The right given by the statute to have his property restored by giving the bond is for the benefit of the defendant; and its exercise, wholly unrelated as it is to the cause of action or its determination, should in reason entail no result to his disadvantage which the law does not exxpressly declare.

"The liability of the defendant on the bond is not to be confused with the liability sought to be adjudged against him on the cause of action. The right to subject the property to the payment of the debt under the attachment seizure being no part of the cause of action, the undertaking of the bond, the substitute for the property, becomes no part of it. The giving of the bond is an acknowledgment of liability under the bond, but it is a liability distinct from that of the cause of action. It is acknowledged only upon the condition of the liability under the latter being established, and is enforceable only in that event."

See article 7097, Civ. Statutes.

The bond for the writ of sequestration is conditioned that the plaintiff or person suing out the writ "will pay to the defendant all such damages as may be awarded against him, and all costs in case it shall be decided that such sequestration was wrongfully issued."

In Lacy v. Gentry, 56 S. W. 949, the Court of Civil Appeals, speaking through Justice Gill, held that, where a writ of sequestration is quashed at the plaintiff's cost, and the property returned to the defendant, it was error to award more than nominal damages in a suit on the sequestration bond. We do not find any other case in Texas directly on the question of liability of the bondsmen under a sequestration writ which has been quashed, but from the language of the statute as to the requisites of the bond, and under the authority of Lacy v. Gentry, supra, and in Castro v. Whitlock, 15 Tex. 437, and upon the authority in other jurisdictions, such as McLean v. Wright, 137 Ala. 644, 35 South. 45, 97 Am. St. Rep. 67, we conclude that no error is shown in rendering judgment against the bondsmen as to the actual damages shown, and as to the value of the truck, to wit, $1,250. In the judgment it was provided that, if the truck should be returned to Stephens in as good condition as it was when taken, such return should be a satisfaction of that part of the judgment for its value.

All assignments are overruled, and the judgment is affirmed.